1  **SEDGWICK LLP**
   Robert D Eassa (Bar No 107970)
2  robert.eassa@sedgwicklaw.com
   Steven D. Roland (Bar No 108097)
3  steven.roland@sedgwicklaw.com
   Garrett C Parks (Bar No. 297971)
4  garrett parks@sedgwicklaw.com
   333 Bush Street, 30th Floor
5  San Francisco, CA 94104-2834
   Telephone.    415 781 7900
6  Facsimile:    415.781 2635

7  Attorneys for Plaintiff FCE BENEFIT
   ADMINISTRATORS, INC
8

**FILED**
**SAN MATEO COUNTY**

JAN 3 0 2015

Clerk of the Superior Court
By _____
         DEPUTY CLERK

9

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                      **COUNTY OF SAN MATEO**

12  FCE BENEFIT ADMINISTRATORS, INC ,      ) CASE NO. **CIV 5 3 2 3 1 7**
                                           )
13              Plaintiff,                 )
                                           )
14      v                                  ) **COMPLAINT FOR (1) BREACH OF**
                                           ) **CONTRACT; (2) BREACH OF**
15  TRAINING, REHABILITATION &             ) **COVENANT OF GOOD FAITH AND**
    DEVELOPMENT INSTITUTE, INC , and        ) **FAIR DEALING; (3) UNJUST**
16  DOES 1-10, inclusive,                  ) **ENRICHMENT; AND (4) QUANTUM**
                                           ) **MERUIT**
17              Defendants                 )
                                           ) **DEMAND FOR JURY TRIAL**
18                                         )
                                           )
19

20          Plaintiff FCE Benefit Administrators, Inc., alleges as follows

21                           **THE PARTIES**

22          1    Plaintiff FCE Benefit Administrators, Inc (FCE), was and is at all times relevant

23  a corporation organized and existing under the laws of the State of California and was and is

24  qualified to do business in California

25          2    FCE's principal place of business was and is at all times relevant located at 887

26  Mitten Road, Burlingame, County of San Mateo

27          3.   On information and belief, Defendant Training, Rehabilitation & Development

28  Institute, Inc (TRDI), was and is at all times relevant a corporation organized and existing under

19831036v2                          -1-
                                  **COMPLAINT**

1   the laws of Texas.

2       4       FCE is ignorant of the true identities of the defendants identified as Does 1

3   through 10, inclusive, and therefore sues those defendants by such fictitious names   FCE is

4   informed and believes that each of the defendants designated as a Doe is liable in some manner

5   for the acts and omissions, damages, and injuries of which FCE alleges in this complaint   FCE

6   will seek leave of court to amend this complaint to state the true identities of Does 1 through 10,

7   when ascertained.

8       5       FCE is informed and believes that each of the defendants, including Does 1

9   through 10, inclusive, were, at all times relevant, acting as the agent, employee, co-venturer or

10  partner, as the case may have been, of each of the other defendants and that in committing the

11  acts, omissions, and causing the damages and injuries alleged, was acting within the scope of

12  such agency, employment, joint venture or partnership relationship

13                          **JURISDICTION AND VENUE**

14      6       The court has personal jurisdiction over TRDI because TRDI consented and

15  submitted to the exclusive jurisdiction of the San Mateo County Superior Court in the contracts

16  described in this complaint

17      7       Venue is proper pursuant to Code of Civil Procedure § 395 5 because the contract

18  was made and performed in San Mateo County, and because TRDI consented to the exclusive

19  jurisdiction of the San Mateo County Superior Court in the contracts described in this complaint

20                          **GENERAL ALLEGATIONS**

21      8       FCE is a third party administrator that provides services including, but not limited

22  to, hour tracking, fringe compliance, consolidated premium billing, and web enrollment and

23  cloud solutions, for fringe benefit health plans in accordance with the Service Contract Act,

24  Davis Bacon Act, and related acts

25      9       On information and belief, TRDI contracts with government entities through

26  which it provides employment opportunities for people with disabilities.

27      10      On or around September 15, 2008, FCE and TRDI entered into an Adoption

28  Agreement for The Health & Welfare Plan of Training, Rehabilitation & Development Institute,

-2-
**COMPLAINT**

1   Inc (Adoption Agreement), to provide health and welfare benefits to eligible TRDI employees,

2   under conditions and circumstances˙ described in the Adoption Agreement and related

3   agreements   Exhibit A to the Adoption Agreement is a fee schedule that sets fees to be paid to

4   FCE for claims administration, compliance and eligibility administration, plan and cost

5   management, and other services for the Plan (the Fee Schedule)   A true and correct copy of the

6   Adoption Agreement and Fee Schedule is attached hereto and incorporated herein as **Exhibit 1**

7          11      The Adoption Agreement incorporates by reference The Health & Welfare Plan

8   (the Plan), which provides for benefits for eligible TRDI employees.   Article VII of the Plan

9   provides that benefits payments made under the Plan will be paid out of a trust to which TRDI

10  makes contributions pursuant to a trust agreement between TRDI and a trustee   A true and

11  correct copy of the Plan is attached hereto and incorporated herein as **Exhibit 2**.

12         12      Article IV, section 4.1 of the Plan delegates certain administrative and managerial

13  functions of the Plan to FCE pursuant to a third party administrator agreement

14         13      On or around September 15, 2008, FCE and TRDI entered into the Third Party

15  Administrator Agreement (the TPA Agreement) by which FCE would provide services related to

16  administering and managing the Plan under conditions and circumstances described in the TPA

17  Agreement (TPA Services). A true and correct copy of the TPA Agreement is attached hereto

18  and incorporated herein as **Exhibit 3**.

19         14.     On or around October 1, 2008, TRDI entered into a Trust Agreement for The

20  Health & Welfare Plan of Training, Rehabilitation & Development Institute, Inc  (the Trust),

21  with Marilyn A  Ward, Esq , and Vivian C  Lewis, Esq , as co-trustees, to establish the Trust and

22  a related plan to receive contributions from TRDI, and to provide health and welfare benefits for

23  the employees of TRDI

24         15      Article II, section (g) of the TPA Agreement imposes a duty on TRDI to ensure

25  that its contributions to the Trust are sufficient to pay all premium costs and plan expenses, and

26  to provide benefits under the Plan

27  ///

28  ///

Sedgwick

19831036v2

-3-
**COMPLAINT**

16     Article III of the TPA Agreement obligates FCE to provide TRDI with TPA Services related to the Plan. FCE has, at all times, fully performed its obligations under the TPA Agreement

17     Article IV, section (a) of the TPA Agreement provides for payment of fees to FCE

> Payment of Administrative Fees   Employer [TRDI] authorizes the payment to FCE and/or other named service providers of the administrative charges specified in the Fee Schedule described in Exhibit 'A' of the Adoption Agreement   In the event FCE or Trustee is requested or required to provide services or produce information or materials other than that described in the Trust and/or TPA agreements, FCE and/or Trustee shall be entitled to compensation from the Trust or Employer [TRDI] for the reasonable costs associated with providing such services and producing such information and materials, including but not limited to copying, printing, postage, professional time, travel expenses, and the like

18     When FCE provides TPA Services and when other service providers provide benefits or services under the Plan, as part of the TPA Services FCE provides, FCE submits the invoices for all such services, addressed to TRDI but forwarded to the Trust, for payment.

19     The Trust ordinarily and historically then pays FCE with Trust funds

20     On March 14, 2014, FCE and TRDI amended the TPA Agreement, in part, to provide that termination of the TPA Agreement is effective on sixty (60) days prior written notice to the other party   A true and correct copy of the amendment is attached hereto and incorporated herein as **Exhibit 4** [1]

21     On March 24, 2014, TRDI informed FCE that TRDI would no longer authorize disbursements from the Trust without the prior written approval of TRDI   A true and correct copy of this notice is attached hereto and incorporated herein as **Exhibit 5**   On or around this time, the Trust stopped dispersing funds to FCE for invoices FCE submitted to the Trust for payment

22.     On or around June 10, 2014, TRDI issued a notice of termination of the TPA Agreement   A true and correct copy of the notice of termination is attached hereto and incorporated herein as **Exhibit 6**   Pursuant to the amendment to the TPA Agreement,

---

[1] As the March 2014 amendments were limited in number and narrow in scope, FCE will continue to refer to the TPA Agreement, as amended, as the TPA Agreement.

**COMPLAINT**

19831036v2

1    termination was originally intended to be effective on August 9, 2014, however, in the notice of

2    termination, TRDI provided for termination as of August 31, 2014

3        23    Article VI, section (c) of the TPA Agreement sets forth certain of the parties'

4    responsibilities on termination of the TPA Agreement

> <u>Responsibilities on Termination</u> On any termination of this Agreement, FCE will complete the processing of all requests for benefit payments under the Plan which are received by FCE prior to the effective date of termination except FCE will not be obligated to process benefit payment requests if Employer fails to fund benefit payments until all funds requested by FCE have been furnished

9        24    The Fee Schedule sets forth additional responsibilities of the parties relating to

10    termination.

**Plan/Trust/TPA Agreement Termination**

> Special services will be required upon the termination of a Plan These include preparation of final form 5500 and all other necessary tax reporting documents Independent accounting/auditing fees will be charged at cost Claims administration fees will be charged at the same rates set forth in this Exhibit for four months after extended benefit period terminates, for claims administration services during that time Trustees' fee will be charged at $2 50 per employee per month for four months after extended benefit period terminates. At notice of termination of the Plan and/or Trust or notice of termination of the services of the Trustee and/or TPA a termination processing fee of $50 per employee participating in the Plan on the date notification was received shall be charged to the Trust.  In the event any then existing asset is distributed to the employees in cash, and/or whenever TPA is directed to distribute plan asset to the employees in cash (as in a partial distribution of plan asset), a dispensing fee of $15 00 per employee will be charged for a single fringe rate and $25 00 per employee will be charged for multiple fringe rates Services shall be provided by the parties named in this agreement from year to year at the rates and terms set forth herein unless modified by the parties in writing at least 60 days prior to the anniversary date of effective coverage under this Plan and Trust

25    On or around July 11, 2014, Madison National Life Insurance Company (MNL)—an insurance company that provided TRDI coverage under the Plan—confirmed to FCE that for MNL to continue to provide TRDI with the coverage called for in the Plan, TRDI would be required to continue using FCE for TPA Services because FCE and MNL had an exclusive provider relationship

1    26    On information and belief, throughout 2014, TRDI made a number of changes to

2    the trustees of the Trust.  On or around April 25, 2014, Robert L Blumenfeld became a co-

3    trustee of the Trust.  On information and belief, on or around July 28, 2014, Mr Blumenfeld

4    became the sole trustee of the Trust.  Since Mr Blumenfeld became a trustee of the Trust, FCE

5    has not been paid by the Trust for TPA Services provided to TRDI under the TPA Agreement

6    27    Between July 2014 and October 2014, as the originally intended termination date

7    approached and then passed, through a series of correspondences and other communications,

8    FCE repeatedly explained the MNL coverage issues to TRDI, and FCE told TRDI that it would

9    continue to provide TPA Services only if TRDI continued to pay for them in accordance with the

10   TPA Agreement  TRDI refused to respond to FCE's requests for confirmation.

11   28.    On information and belief, TRDI wished to continue receiving coverage provided

12   by MNL and, otherwise desired that FCE continue to provide TPA Services and, therefore,

13   through the same July through October correspondence and other communications, TRDI asked

14   or effectively asked for, and consented to, the continuation of the TPA Agreement, at least until

15   TRDI found another insurer and notified FCE that its services would no longer be required

16   29    TRDI's continued acceptance of benefits provided by MNL and continued

17   acceptance of FCE's TPA Services was tantamount to a request to maintain and continue the

18   Plan and TPA Agreement in force until it found another insurer and notified FCE that its services

19   would no longer be required.

20   30    During September and October 2014, FCE repeatedly advised TRDI that FCE

21   was continuing to provide TPA Services related to TRDI's MNL coverage  TRDI did not

22   respond to FCE's overtures

23   31    On or around October 20, 2014, TRDI finally informed FCE that it had put

24   another insurance policy in place

25   32.    As a result of TRDI's delay and failure to provide notice to FCE of its finding of

26   replacement coverage, FCE continued to provide TRDI with TPA Services related to TRDI's

27   MNL coverage through October 2014 (the period from August 2014 through October 2014 is

28   referred to as the Extended Services Period)  TRDI failed to pay FCE for the MNL premiums

Sedgwick

19831036v2

-6-

**COMPLAINT**

1    and TPA Services provided during the Extended Services Period.

2         33    As of the expiration of the Extended Services Period, FCE has provided TPA

3    Services to TRDI in an amount of at least $114,352 34, but in a total amount to be proven at trial,

4    all of which has gone unpaid by TRDI and the defendants

5         34.   As of the expiration of the Extended Services Period, FCE has incurred fees and

6    costs under the Fee Schedule provision relating to termination of the TPA Agreement in an

7    amount of at least $18,000, but in a total amount to be proven at trial, all of which has gone

8    unpaid by TRDI and the defendants

9         35    In addition, FCE has invoiced TRDI for payment in an amount of at least

10   $373,837 95, but in a total amount to be proven at trial, on behalf of other named service

11   providers that provided TRDI with services and benefits pursuant to the Plan, which has gone

12   unpaid by TRDI and the defendants

13        36    In December 2014 and January 2015, FCE has met and otherwise corresponded

14   with TRDI and requested payment of amounts owing, the same of which TRDI and defendants

15   have not paid

16        37    The TPA Agreement provides for attorneys' fees and costs to the prevailing party

17   in any dispute

18                 **FIRST CAUSE OF ACTION: BREACH OF CONTRACT**

19        38    FCE incorporates by reference the allegations set forth in paragraphs 1-37

20        39.   TRDI and defendants breached the TPA Agreement by failing to authorize and

21   instruct the Trust to make payments to FCE for TPA Services provided before the original

22   termination of the TPA Agreement became effective, and failing to authorize and instruct the

23   Trust to pay FCE for TPA Services FCE provided during the Extended Services Period.

24        40    TRDI and defendants breached the TPA Agreement by failing to pay, or cause the

25   Trust to pay, FCE for fees and costs incurred under the Fee Schedule relating to termination of

26   the TPA Agreement

27        41.   TRDI and defendants further breached the TPA Agreement by failing to authorize

28   and instruct the Trust to pay FCE for the invoices FCE submitted on behalf of other named

Sedgwick...

1  service providers that provided services and benefits to TRDI pursuant to the Plan

2      42.    Due to TRDI's and defendants' breaches, FCE has incurred damages of at least

3  $506,190 29, but in an amount to be proven at trial

4      43    Due to TRDI's and defendants' breaches, FCE has incurred attorneys' fees and

5  costs, and will continue to do so, to collect on monies owed to it and in prosecution of this suit

6  **SECOND CAUSE OF ACTION: BREACH OF COVENANT OF GOOD FAITH**

7  **AND FAIR DEALING**

8      44    FCE incorporates by reference the allegations set forth in paragraphs 1-43

9      45.    FCE and TRDI agreed, or effectively agreed, that FCE would continue to provide

10  TPA Services through the Extended Services Period.

11      46    There was an implied obligation on the part of TRDI and defendants to pay FCE

12  for those services or to cause the Trust to do so

13      47    TRDI and defendants breached its duty of good faith and fair dealing by failing to

14  pay FCE or by failing to cause the Trust to pay FCE for services provided in the Extended

15  Services Period

16      48    Due to TRDI's and defendants' breaches, FCE has incurred damages of at least

17  $506,190 29, but in an amount to be proven at trial

18      49    Due to TRDI's and defendants' breaches, FCE has incurred attorneys' fees and

19  costs, and will continue to do so, to collect on monies owed to it and in prosecution of this suit

20  **THIRD CAUSE OF ACTION: UNJUST ENRICHMENT**

21      50.    FCE incorporates by reference the allegations set forth in paragraphs 1-49

22      51    FCE conferred a benefit onto TRDI and defendants by providing TPA Services

23  before the original termination of the TPA Agreement was intended to become effective

24      52    FCE conferred a benefit onto TRDI and defendants by providing services called

25  for in the Fee Schedule relating to termination of the TPA Agreement.

26      53    FCE conferred a benefit onto TRDI and defendants by providing TPA Services

27  through the Extended Services Period

28  ///

1    54    Other service providers conferred a benefit onto TRDI and defendants by

2    providing services and benefits to TRDI pursuant to the Plan before the effective termination

3    date of the TPA Agreement and through the Extended Services Period

4    55    TRDI and defendants knowingly accepted the TPA Services and other benefits

5    and services conferred by FCE and other service providers

6    56    It would be unjust and inequitable for TRDI and defendants to retain the benefit

7    of the TPA Services and other benefits and services without paying for them

8    <u>**FOURTH CAUSE OF ACTION: QUANTUM MERUIT**</u>

9    57.    FCE incorporates by reference the allegations set forth in paragraphs 1-56

10    58    TRDI and defendants received the benefit of FCE providing TPA Services

11    through the date that the original termination of the TPA Agreement was intended to become

12    effective

13    59    TRDI and defendants received the benefit of the services FCE provided under the

14    Fee Schedule prior to termination of the TPA Agreement

15    60    TRDI and defendants received the benefit of the TPA Services FCE provided

16    through the Extended Services Period.

17    61    TRDI and defendants received the benefit of services provided by other service

18    providers before the effective termination date of the TPA Agreement and through the Extended

19    Services Period

20    62    TRDI and defendants received the TPA Services and other benefits and services

21    without paying for them

22    63    FCE is entitled to compensation for the reasonable value of the TPA Services and

23    the other benefits and services provided to TRDI and defendants in an amount to be proven at

24    trial

25    <u>**PRAYER FOR RELIEF**</u>

26    WHEREFORE, FCE seeks judgment against TRDI and defendants as follows:

27    a)   For damages in an amount to be proven at trial but not less than $506,190 29,

28    b)   For prejudgment and post-judgment interest as provided under the law,

Sedgwick™

19831036v2

1    c)  For attorneys' fees and costs as provided in the TPA Agreement, and

2    d)  For such other and further relief as the Court may deem just and proper

3

4   DATED   January 30, 2015              SEDGWICK LLP

5

6                                         By: _____
                                              Robert D Eassa
7                                             Steven D  Roland
                                              Garrett C  Parks
8                                             Attorneys for Plaintiff
                                              FCE BENEFIT ADMINISTRATORS, INC
9

10                          **DEMAND FOR JURY TRIAL**

11        Plaintiff FCE demands a trial by jury

12

13  DATED   January 30, 2015              SEDGWICK LLP

14

15                                        By _____
                                             Robert D  Eassa
16                                           Steven D  Roland
                                             Garrett C  Parks
17                                           Attorneys for Plaintiff
                                             FCE BENEFIT ADMINISTRATORS, INC
18

19

20

21

22

23

24

25

26

27

28

Sedgwick LLP

19831036v2

-10-
**COMPLAINT**

# Exhibit 1

# ADOPTION AGREEMENT

The Adoption Agreement establishes the Plan under your sponsorship as the Employer (In fact, this Agreement is commonly referred to as the "Plan.") Accordingly, the Agreement sets forth rules, procedures and respective obligations under the Plan. Exhibits and attachments include a Fee Schedule for administrative services, a Summary Plan Description ("SPD") that describes Employee benefits, a Group Information Form that confirms the fringe obligation(s), and a Schedule I/Business Associate Agreement that ensures proper handling of Protected Health Information in accordance with HIPAA requirements.

1

© Copyright 2004 FCE Benefit Administrators, Inc. All Rights Reserved

# ADOPTION AGREEMENT
## FOR
## THE HEALTH & WELFARE PLAN
## OF
## TRAINING, REHABILITATION & DEVELOPMENT INSTITUTE, INC.

Effective as of October 1, 2008, TRAINING, REHABILITATION & DEVELOPMENT INSTITUTE, INC, a Texas corporation ("Employer") adopts this Adoption Agreement and the Health & Welfare Plan of TRAINING, REHABILITATION & DEVELOPMENT INSTITUTE,, INC, (collectively "Plan")

## RECITALS

The purposes of this Plan are to (1) assure compliance with existing law and (2) provide health and welfare benefits for certain eligible employees of Employer and their eligible dependents

This Plan is intended to comply with the applicable requirements of the Internal Revenue Code of 1986, as amended ("Code"), the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and, to the extent applicable, the Service Contract Act of 1965.

## 1.     ADOPTION OF PLAN

A       By adopting the Plan, Employer agrees to be bound by the terms of this Adoption Agreement and Exhibits thereto, and the Plan and Exhibits thereto, in the form attached to and made a part of this Adoption Agreement  Employer acknowledges its obligation to make contributions of amounts required by this Adoption Agreement, the Plan and the related Trust Agreement ("Trust")

B.      This Plan Number for reporting and disclosure purposes for this Plan will be· 501.

## 2.     EMPLOYER INFORMATION

A       Entity Type. The Employer is a corporation, incorporated under the laws of the State of Texas

B       Employer Tax Identification Number: 74-2938051.

2

© Copyright 2004 FCE Benefit Administrators, Inc  All Rights Reserved

3.    **EMPLOYER CONTRIBUTIONS**

Employer will contribute on behalf of each eligible Employee an amount determined by an Employer/Employee agreement, an Employer/Client agreement, an Employer/Contracting Agency agreement, a DOL Wage Determination Schedule or similar arrangement, or the actuarially determined cost of Employee benefits and Plan expenses, which may differ from the amount Employer is paying or is required to pay for its Employees

Those eligible Employees and Dependents and the required contribution amounts will be based on each Group Information Form attached to and made a part of this Plan as Exhibit(s) A-1 (to A-n), for each benefit plan design that is administered under the Plan The Group Information Form will contain, among other items, the contract site location and the contribution obligation for that site, as modified from time to time under the Plan

4.    **DEFINITIONS**

All capitalized terms under this Adoption Agreement will have the meanings defined in the Plan or Trust Agreement unless modified in this Adoption Agreement, or the context of this Adoption Agreement indicates a different meaning

5.    **ALTERATION OF ADOPTION AGREEMENT**

No change or amendment to this Adoption Agreement will be effective unless both Employer and the Plan's Third Party Administrator have approved that change in writing.

6.    **MISCELLANEOUS**

This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute a single document. This Adoption Agreement and Exhibits thereto, and the Plan and Exhibits thereto, will each become effective on the execution of a counterpart of it by each party to this Agreement

© Copyright 2004 FCE Benefit Administrators, Inc  All Rights Reserved

IN WITNESS OF THIS ADOPTION AGREEMENT, Employer verifies, acknowledges and approves the information provided herein to include the Adoption Agreement and Exhibits thereto, which consists of the Fee Schedule, and the Plan and Exhibits thereto, which consists of the Group Information Forms, PHI Certification and Schedule 'I' and the Business Associates Agreement, and the Plan Funding Policy, and has executed this Adoption Agreement this 15th day of September 2008

EMPLOYER/PLAN SPONSOR/PLAN ADMINISTRATOR

**TRAINING, REHABILITATION, & DEVELOPMENT INSTITUTE, INC.**
**A Texas Corporation**

By _____
Juan Rangel
President/CEO

THIRD PARTY ADMINISTRATOR

**FCE BENEFIT ADMINISTRATORS, INC.**
A California Corporation

By _____
Gary Beckman
President, CEO

4

© Copyright 2004 FCE Benefit Administrators, Inc   All Rights Reserved

EXHIBIT '‘A’'
TO
ADOPTION AGREEMENT

FEE SCHEDULE
FOR
THE HEALTH & WELFARE PLAN
OF
TRAINING, REHABILITATION & DEVELOPMENT INSTITUTE, INC.


## Health & Welfare Plan

The following fees are based on total Contributions due to the Trust, in accordance with Article 2 1 of the Trust agreement, Section 1 2 of the Plan agreement and Articles II and IV of the TPA agreement   Each table below schedules the fee charged, either as a percent of total Contributions due from Employer to the Trust, or as a Per Employee Per Month fee ("PEPM")   The fee decreases in a stepwise fashion at each incremental increase in the Number of Employees   The first 99 employees are charged differently from the next 399 employees, and so on   For purposes of efficiency and convenience, a weighted average fee is calculated twice annually for each listed service.   The stated PEPM fees are effective for calendar year 2008 and 2009, and shall be adjusted annually thereafter by no more than the percentage change in the Consumer Price Index (CPI) as published by the Bureau of Labor Statistics for the San Antonio, Texas metropolitan statistical area


**A (1).  Medical and Ancillary Claims Administration (only if applicable)**

|  | NUMBER OF EMPLOYEES | | | |
|---|---|---|---|---|
|  | Up to 99 | 100-499 | 500-999 | 1000-2499 |
| Claim Fee PEPM | $19 | $18 | $17 | $16 |

Add $4 50 PEPM for Major Medical Plans
Should FCE re-price Network Claims, it shall also be paid the budgeted expense

Fee is collected for a minimum of seven months annually for each covered employee   Fee continues for 4 months after an employee's benefits under the plan terminate


**A (2).  Ancillary-Only Claims Administration (only if applicable)**

|  | NUMBER OF EMPLOYEES | | | |
|---|---|---|---|---|
|  | Up to 99 | 100-499 | 500-999 | 1000-2499 |
| First Benefit Fee PEPM | $6 | $5 | $4 50 | $4 |
| Each Added Benefit Fee PEPM | $3 | $2 50 | $2 | $1 50 |

1

© Copyright 2004 FCE Benefit Administrators, Inc   All Rights Reserved

### B. Compliance Administration

| | NUMBER OF EMPLOYEES | | | |
|---|---|---|---|---|
| | Up to 99 | 100-499 | 500-999 | 1000-2499 |
| Fee as a percentage of total contribution obligation | 7 5% | 7 25% | 7% | 6 75% |

### C. Plan and Cost Management

| | NUMBER OF EMPLOYEES | | | |
|---|---|---|---|---|
| | Up to 99 | 100-499 | 500-999 | 1000-2499 |
| Fee as a percentage of total contribution obligation | 8.5% | 8 25% | 8% | 7 75% |

### D. Eligibility Administration

| | NUMBER OF EMPLOYEES | | | |
|---|---|---|---|---|
| | Up to 99 | 100-499 | 500-999 | 1000-2499 |
| Fee as a percentage of total contribution obligation | 7 5% | 7 25% | 7% | 6 75% |

### E. Plan Representative Services

| | NUMBER OF EMPLOYEES | | | |
|---|---|---|---|---|
| | Up to 99 | 100-499 | 500-999 | 1000-2499 |
| Fee as a percentage of total contribution obligation | 2% | 1 75% | 1 5% | 1 25% |

### F Trustee Services

For services provided by the Trustee as set forth in Article V of the Trust Agreement.

| | NUMBER OF EMPLOYEES | | | |
|---|---|---|---|---|
| | Up to 99 | 100-499 | 500-999 | 1000-2499 |
| Fee as a percentage of total contribution obligation | 1% | 1% | 1% | 1% |

### G. Plan Asset Maintenance (only if applicable)

For services provided by FCE and Trustee for the ongoing maintenance of Plan asset in the event Employer/Sponsor ceases funding the Plan and/or there are no participants actively covered by the Plan

| | |
|---|---|
| FCE fee as a percentage of remaining asset | 0 166% per month |
| Trustee fee as a percentage of remaining asset | 0 042% per month |

© Copyright 2004 FCE Benefit Administrators, Inc   All Rights Reserved

## Plan/Trust/TPA Agreement Termination

Special services will be required upon the termination of a Plan. These include preparation of final form 5500 and all other necessary tax reporting documents Independent accounting/auditing fees will be charged at cost. Claims administration fees will be charged at the same rates set forth in this Exhibit for four months after extended benefit period terminates, for claims administration services during that time   Trustees' fee will be charged at $2 50 per employee per month for four months after extended benefit period terminates   At notice of termination of the Plan and/or Trust or notice of termination of the services of the Trustee and/or TPA a termination processing fee of $50 per employee participating in the Plan on the date notification was received shall be charged to the Trust. In the event any then existing asset is distributed to the employees in cash, and/or whenever TPA is directed to distribute plan asset to the employees in cash (as in a partial distribution of plan asset), a dispensing fee of $15 00 per employee will be charged for a single fringe rate and $25 00 per employee will be charged for multiple fringe rates   Services shall be provided by the parties named in this agreement from year to year at the rates and terms set forth herein unless modified by the parties in writing at least 60 days prior to the anniversary date of effective coverage under this Plan and Trust

3

© Copyright 2004 FCE Benefit Administrators, Inc   All Rights Reserved

# Exhibit 2

# THE HEALTH & WELFARE PLAN

THIS HEALTH and Welfare Plan is adopted by the Employer described in the Adoption Agreement of which this is a part.

Employer intends that the Plan and Trust qualify as a <u>bona fide</u> plan within the meaning of Section 2 of the Service Contract Act of 1965 (41 USC 351) and as an employee welfare benefit plan under Section 3(1) of ERISA (29 USC 1002).   It is intended to comply with regulations established under laws such as the McNamara-O'Hara Service Contract Act (41USC 351, et seq) Davis-Bacon Act (40 USC 276a-276a-7) Davis-Bacon and Related Acts, or prevailing or living wage laws or ordinances established by a state or political subdivision

## I. DEFINITIONS

The following terms will have the indicated meanings for the Adoption Agreement, Plan, Trust and related documents unless otherwise indicated in those documents  Definitions set out in the Summary Plan Description are hereby incorporated by reference

1 1     "Contracting Agency" shall mean any Federal, State, municipal or other contracting authority which has the power to require the Employer to pay specific fringe dollar amounts for Its Employees

1 2     "Contribution" shall mean the Fringe Benefit Amounts, which Employer is required to pay for its Employees' benefits by the Contracting Agency, as amended from time to time  Contribution shall also mean the Fringe Benefit Amounts, which Employer is required to pay for its Employees' benefits by virtue of any Federal, State, municipal or other Ordinance or Statute, as amended from time to time  Contribution shall also mean amounts, which Employer is required to pay for its Employees' benefits, which are agreed upon between the Employer/Sponsor, Trustee and TPA for the Employees who are not governed or regulated by a Contracting Agency  Contribution shall also mean the total hourly, weekly or monthly actual or actuarially determined cost of Employee benefits and Plan expenses, which may differ from the amount Employer is paying or is required to pay for its Employees

1 3     "Earned Hours" shall mean the hours for an Employee which are required to be credited to that Employee by the Contracting Agency, Ordinance, Statute or agreement, to determine Fringe Benefit Amounts for the payroll periods in the month preceding the month in which Employer is required to make its Contribution.

1 4     "Earned Hours Record" shall mean Employee information necessary to support the Employer Contribution for Earned Hours and ascertain the appropriate level of Employee benefits under the Plan.  This information shall include, but not be limited to, each Employee's name, social security number, date of hire, date of termination, Earned Hours, Fringe Benefit hourly rate and total Contribution for that Employee for the payroll periods relating to those Earned Hours

1 5     "Employee" shall mean each common law employee of Employer who is employed under a Contract issued by a Contracting Agency, or who is otherwise

1

© Copyright 2004 FCE Benefit Administrators, Inc  All Rights Reserved

designated by Employer as a participant in the Plan. "Employee" shall also mean each common law employee of Employer who is employed under a Contract between Employer and another legal entity wherein certain Employer payroll related obligations are governed by any Federal, State, municipal or other Ordinance or Statute  "Employee" shall also mean each employee of an entity with whom Employer is providing services and for whom Employer has agreed to make contributions to Employer's Health and Welfare Plan in accordance with the Trust  This includes, but is not limited to, affiliated entities, joint venture partners, prime contractor and sub-contractor relationships.

    1 6    "Employer" means the employer described in the Adoption Agreement, and any successor or assign of the employer and any other company which is related or affiliated or engaged in a joint venture with the employer.

    1.7    "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time

    1.8    "Fringe Benefit Amounts" shall mean the dollar amount per hour, or other period, which Employer must contribute for each Employee under each applicable Contract

    1.9    "Group Information Form" shall mean the A-series attachments to the Plan wherein the Employer affirms certain data concerning itself and the Plan, including the anticipated rate of funding

    1.10    "HIPAA" shall mean the Health Insurance Portability and Accountability Act of 1996, as amended

    1 11    "Insurer" shall mean the insurance company that provides benefits under the Plan through a policy of insurance

    1 12    "Plan" shall mean the Adoption Agreement, the related Plan document and all attachments and documents incorporated by reference

    1 13    "Plan Administrator" within the meaning of Section 3(16)(A) of ERISA shall mean the Employer

    1 14    "Service Contract" shall mean any contract under which Employer is required to provide employee services to a government agency or similar entity and for which Employer has adopted this Plan to satisfy Employer's fringe benefit obligations there under

    1.15    "SPD" shall mean the summary plan description for each Group Information Form attached to and made a part of this Plan as an Exhibit A  Each contract site location and/or unique benefit schedule under the Plan will have its own Summary Plan Description ("SPD")  Therefore, the SPD set forth herein is intended merely to *represent* the full complement of booklets

    1 16    "Third Party Administrator" or "TPA" shall mean FCE Benefit Administrators, Inc , a California corporation, and any successor

## II. PARTICIPATION

    2.1    Eligibility  Employees will be eligible to become Participants in the Plan as of the date determined under the Group Information Forms which are attached as an exhibit hereto and may become Participants when Employer funds the Plan for that employee

© Copyright 2004 FCE Benefit Administrators, Inc  All Rights Reserved

2 2    Cessation of Participation    All rights to receive benefits for claims of a Participant, and any spouse, Dependent or both of that Participant will terminate on the events and at the time described in the Summary Plan Description.

### III. BENEFITS

3.1    Benefits.    Each Participant will be entitled to the benefits described in the Summary Plan Description, as amended from time to time under the Plan.

3 2    Exclusions.    No reimbursement will be made for any expenses that are excluded under the Summary Plan Description

### IV. PLAN ADMINISTRATION

4.1    Employer Responsibilities.    Employer has the authority to administer the Plan    Employer delegates certain of the administrative and ministerial functions of the Plan to the Third Party Administrator as specifically set forth in this Plan and the Third Party Agreement

4 2    Powers and Duties of Employer    Employer, acting through its Board of Directors and authorized officers, will have the power, in its sole and absolute discretion, to interpret and construe the provisions of the Plan, to supply omissions in the Plan, and to establish rules and regulations for the interpretation and administration of the Plan and transaction of its business, including but not limited to determining eligible Employees and Dependents and how benefits are determined.    All these interpretive and administrative decisions, and rules and regulations, will be binding on all persons having an interest in the Plan

4 3    Records and Reports    Except to the extent delegated to the Third Party Administrator under the Third Party Administrator Agreement, Employer will be responsible for keeping a record of all its proceedings and actions and will maintain all those books of account, records, and other data necessary to administer this Plan and to meet the disclosure and reporting requirements of ERISA

4 4    Participant's Incapacity    If a physician, psychiatrist or other person satisfactory to Employer or Third Party Administrator certifies in writing that a person entitled to receive a payment under this Plan is under a legal disability, is a minor or is incapacitated in any other way so as to be unable to personally receive and give a valid receipt for any payment due him or her under the Plan, then Employer or Third Party Administrator may, unless a claim has been made by a duly appointed guardian, conservator or trustee for that person, make the payment of benefits to that person's spouse, child, parent or any other person deemed by Employer or Third Party Administrator to have incurred an expense for or assumed responsibility for the expenses of that person    Any payment made under this Section will be a complete discharge of any liability for making that payment under the provisions of this Plan.

4 5    Bonding.    An ERISA bond or any other bond, as required by law, will be secured by this Plan

3

© Copyright 2004 FCE Benefit Administrators, Inc All Rights Reserved

4 6    Insurer Responsibilities  To the extent that any Plan benefits are provided by an Insurer under an insurance policy covering Employees of the Employer, the Insurer will have the power in its sole and absolute discretion to interpret the provisions of its insurance policy including, but not limited to, eligibility for coverage, eligibility for benefits, benefits amounts, decisions on appeals, and all other matters relating to such insurance policy. The Plan allocates to the Insurers responsibility for administering the Plan's claims procedures and for exercising other fiduciary functions described in the insurance policy issued by such Insurers, which also contain the rules for determining eligibility to participate in each insured program and eligibility to receive benefits under each insured program.

## V. CLAIMS PROCEDURES

5 1    Claims Procedures  All procedures for review of claims, claims denials and appeals of claims will be determined under the applicable Summary Plan Description

## VI. CONTINUATION OF COVERAGE

6 1    Continuation Coverage.  All notices and procedures for providing continuation of health coverage under the Plan to the extent required by applicable law will be determined under the applicable Summary Plan Description

## VII. FUNDING POLICY

7 1    Funded Trust  Employer's payments from the Plan will be provided out of the trust fund under the Trust Agreement between Employer and Trustee

## VIII. COMPLIANCE WITH PRIVACY STANDARDS

Certain members of the Employer's workforce perform services in connection with administration of the Plan In order to perform these services, it is necessary for these employees from time to time to have access to Protected Health Information (as defined below)   Under the Section 164 504(f) of the Standards for Privacy of Individually Identifiable Health Information (45 CFR Part 164, Subpart E), these employees are permitted to have such access in accordance with the following standards.

8 1    General. The Plan shall not disclose Protected Health Information to any member of Employer's workforce unless each of the conditions set out in this Amendment are met. "Protected Health Information" shall have the same definition as set out in the Privacy Standards but generally shall mean individually identifiable information about the past, present or future physical or mental health or condition of an individual, including information about treatment or payment for treatment.

4

© Copyright 2004 FCE Benefit Administrators, Inc  All Rights Reserved

8 2    Permitted Uses and Disclosures  Protected Health Information disclosed to members of Employer's workforce shall be used or disclosed by them only for purposes of Plan administrative functions  The Plan's administrative functions shall include all Plan payment functions and health care operations. The terms "payment" and "health care operations" shall have the same definitions as set out in the Privacy Standards, but the term "payment" generally shall mean activities taken with respect to payment of premiums or contributions, or to determine or fulfill Plan responsibilities with respect to coverage, provision of benefits, or reimbursement for health care  "Health care operations" generally shall mean activities on behalf of the Plan that are related to quality assessment, evaluation, training or accreditation of health care providers, underwriting, premium rating and other functions related to obtaining or renewing an insurance contract, including stop loss insurance; medical review, legal services or auditing functions, or business planning, management and general administrative activities

8 3    Authorized Employees.  The Plan shall disclose Protected Health Information only to members of the Employer's workforce who are designated on Schedule I hereto and are authorized to receive such Protected Health Information, and only to the extent and in the minimum amount necessary for that person to perform his or her duties with respect to the Plan  For purposes of this Plan, "members of the Employer's workforce" shall refer to all employees and other persons under the control of the Employer.

a    Updates Required. The Employer shall amend Schedule I promptly with respect to any changes in the members of its workforce who are authorized to receive Protected Health Information.

b    Use and Disclosure Restricted. An authorized member of the Employer's workforce who receives Protected Health Information shall use or disclose the Protected Health Information only to the extent necessary to perform his or her duties with respect to the Plan

c    Resolution of issues of noncompliance. In the event that any member of the Employer's workforce uses or discloses Protected Health Information other than as permitted by this Plan and the Privacy Standards, the incident shall be reported to the Plan's privacy officer. The privacy officer shall take appropriate action, including·

(1)    Investigation of the incident to determine whether the breach occurred inadvertently, through negligence or deliberately, whether there is a pattern of breaches; and the degree of harm caused by the breach;

(2)    Appropriate sanctions against the persons causing the breach which, depending upon the nature of the breach, may include oral or written reprimand, additional training, or termination of employment,

(3)    Mitigation of any harm caused by the breach, to the extent practicable; and

(4)    Documentation of the incident and all actions taken to resolve the issue and mitigate any damages.

© Copyright 2004 FCE Benefit Administrators, Inc  All Rights Reserved

8 4     <u>Certification of Employer</u>  The Employer must provide certification to the Plan that it agrees to:

a    Not use or further disclose the information other than as permitted or required by the Plan documents or as required by law;

b    Ensure that any agent or subcontractor, to whom it provides Protected Health Information received from the Plan, agrees to the same restrictions and conditions that apply to the Employer with respect to such information,

c.   Not use or disclose Protected Health Information for employment-related actions and decisions or in connection with any other benefit or employee benefit plan of the Employer;

d    Report to the Plan any use or disclosure of the Protected Health Information of which it becomes aware that is inconsistent with the uses or disclosures permitted by this Plan, or required by law,

e    Make available Protected Health Information to individual Plan members in accordance with § 164 524 of the Privacy Standards;

f    Make available Protected Health Information for amendment by individual Plan members and incorporate any amendments to Protected Health Information in accordance with § 164 526 of the Privacy Standards,

g.   Make available the Protected Health Information required to provide an accounting of disclosures to individual Plan members in accordance with § 164.528 of the Privacy Standards,

h.   Make its internal practices, books and records relating to the use and disclosure of Protected Health Information received from the Plan available to the Department of Health and Human Services for purposes of determining compliance by the Plan with the Privacy Standards,

i    If feasible, return or destroy all Protected Health Information received from the Plan that the Employer still maintains in any form, and retain no copies of such information when no longer needed for the purpose for which disclosure was made, except that, if such return or destruction is not feasible, limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible; and

j.   Ensure the adequate separation between the Plan and members of the Employer's workforce, as required by § 164.504(f)(2)(iii) of the Privacy Standards and set out in Section 8.3 hereof

### IX. AMENDMENT AND TERMINATION

9 1     <u>Employer Right to Amend or Terminate</u>  Employer reserves the right to amend or terminate in whole or in part any or all of the provisions of this Plan, provided that the amendment or termination is permissible under applicable law and the amendment or termination will not affect a claimant's rights to benefits with respect to reimbursable expenses that have been incurred prior to the date Employer action is taken to terminate the Plan or the effective date of such termination, whichever occurs last Such amendment or termination shall be made by a party authorized to act on behalf of

6

© Copyright 2004 FCE Benefit Administrators, Inc  All Rights Reserved

Employer, which action shall be written. No amendment to the Plan will change any term or condition of any other related document included in the Adoption Agreement without the written consent of TPA.

9.2 <u>Mandatory Amendments</u> Notwithstanding the provisions of this Article, or of any other provisions of this Plan, any amendment may be made, retroactively if necessary, which Employer or Third Party Administrator deems necessary or appropriate to conform this Plan to, or satisfy the conditions of, any law, government regulation or ruling, and to permit this Plan to meet the requirements of applicable law.

9.3 <u>Termination</u> Employer reserves the right at any time to terminate this Plan by delivering to Employees written notice of termination, so long as said termination is in accordance with the terms set forth in the Trust Agreement and the Third Party Administrator Agreement

## X. MISCELLANEOUS

10.1 <u>Participant's Rights</u> Neither the establishment of this Plan, nor any modification of it, nor the payment of any benefits, will be construed as giving to any Participant or other person any legal or equitable right against Employer or any of its officers, employees or agents, except as provided in this Plan. Under no circumstances will the terms of employment for any Participant be modified or in any way affected by this Plan.

10.2 <u>Governing Law</u> Subject to ERISA or other applicable federal law, this Plan will be construed under the laws of the State of California.

10.3 <u>Binding on All Parties</u> Any final judgment which is not appealed or appealable that may be entered in any legal action or proceeding will be binding and conclusive on the parties to that action or proceeding, Employer, and all persons having or claiming to have an interest under this Plan

10.4 <u>Headings</u>. The headings of this Plan are inserted for convenience of reference only, and are not to be considered in the construction or the interpretation of this Plan

10.5 <u>Severability of Provisions</u>. If any provision of this Plan is held to be invalid or unenforceable, that invalidity or unenforceability will not affect any other provision, and this Plan will be construed and enforced as if that provision had not been included

10.6 <u>Nonassignability</u> The rights, interests and benefits under this Plan may not be assigned or alienated by a Participant or Dependent in any manner except as specifically permitted under this Plan and will not be subject to execution, attachment or similar process.

10.7 <u>Construction of Terms</u>. All terms in the Plan include the feminine and neuter genders and all references to the plural include the singular and vice versa, as appropriate.

10.8 <u>Integration of Plan Document</u>. This document and the related Adoption Agreement and its attachments contain all of the operative provisions of this Plan Any conflict between the provisions of those documents and any other Employer document purporting to explain the rights, benefits or obligations under the Plan will be resolved in favor of this Plan document.

7

© Copyright 2004 FCE Benefit Administrators, Inc All Rights Reserved

## Exhibit A

## Group Information Form ("GIF")

| COMPANY PROFILE | |
|---|---|
| Legal Name | Training, Rehabilitation & Development Institute, Inc |
| Address | 4241 Piedras Drive East, Suite 150, San Antonio, TX  78228 |
| Phone / Fax | 210 736 6670 / 210 736 6675 |
| Federal Tax ID Number | 74-2938051 |
| State of Incorporation | TX |
| Primary Contact | Juan Rangel |
| Title | President/CEO |
| e-Mail | Tridiagrangel@aol com |
| Signatory of Documents | Juan Rangel |

| CONTRACT SITE PROFILE | |
|---|---|
| Name of Contract | Earl Cabell Federal Building |
| Address | 1100 Commerce Street, Room 269, Dallas, TX 75247 |
| Contact Information | Use Corporate Contact |
| Payroll Cycle | Biweekly |
| Date Contributions First Withheld | October 1, 2008 |
| Effective Date of Coverage for Initial Group Transferring From Prior Contractor | December 1, 2008 |

| PLAN PROFILE | |
|---|---|
| Plan Number | 501 |
| Plan Type | Scheduled Benefits |
| Plan Design | Family |
| Is this a mandatory plan? | Yes |
| Funding Type *Hourly Fringe, Self-Invoiced, FCE-Invoiced* | SCA Hourly Fringe |
| Hourly Fringe Contribution | $3.24 |
| Waiting Period for Employees Not In Initial Group Transferring From Prior Contractor | First of the Month Following One Month of Continuous Employment on a Fringe Contract |
| When Coverage Ends | Midnight on the Last Day of the Month in which Eligibility Ceases |

Employer verifies that the information provided on this GIF is correct

By ___*Juan Rangel*___

Title· ___*CEO*___

Date ___11/3/08___

1

**EXHIBIT 'B'**
**TO**
**THE HEALTH AND WELFARE PLAN**

**PLAN SPONSOR CERTIFICATION**
**FOR**
**COMPLIANCE WITH PRIVACY STANDARDS**

Employer Sponsor of the Plan certifies that the Plan complies with Section 164 504(f) of the Standards for Privacy of Individually Identified Health Information (45 CFR Part 164, Subpart E)

**Training, Rehabilitation & Development Institute, Inc.**

Signature: _Juan Rangel_

Name  Juan Rangel

Title  President/CEO

Date  September 15, 2008

**SCHEDULE 'I'**

Under this schedule, the Employer Sponsor of the Plan shall designate by job classification/title those members of the employer's workforce who are authorized to receive Protected Health Information to the extent and in the minimum amount necessary for that person to perform his or her duties with respect to the Plan

| Job Classification/Title |
|---|
| HR Dept / H R Director |
|  |
|  |
|  |
|  |
|  |
|  |

EXHIBIT 'C'
TO
THE HEALTH AND WELFARE PLAN

BUSINESS ASSOCIATE AGREEMENT
FOR
COMPLIANCE WITH PRIVACY STANDARDS

**The Plan ("Covered Entity" Within the Meaning of the Privacy Standards)**

Name      Training, Rehabilitation & Development Institute, Inc. Health and Welfare
Plan

**The Claim Administrator ("Business Associate" Within the Meaning of the Privacy Standards)**

Name·      FCE Benefit Administrators, Inc
Address    887 Mitten Road, Suite 200
           Burlingame, CA  94010-1303

## 1.1 Intent.

The purpose of this Agreement is to set out the rights and responsibilities of the parties
under the Standards for Privacy of Individually Identifiable Health Information under the
Health Insurance Portability and Accountability Act ("HIPAA") and its implementing
regulations (the Standards for Privacy of Individually Identified Health Information (45
CFR Part 164, Subpart E) and the Security Standards for the Protection of Electronic
Protected Health Information (45 CFR Part 164, Subpart C)), hereinafter referred to
collectively as the "Privacy Standards," which took effect April 14, 2004. The intent is to
provide the protections required by the Privacy Standards, but to retain for the parties the
greatest latitude and flexibility permitted under those standards in order to facilitate the
prompt and efficient provision of services under this Agreement. The terms of this
Agreement shall be interpreted and applied consistent with this intent and with the
Privacy Standards

As used in this Agreement, "Protected Health Information" has the meaning set out in the
Privacy Standards, generally, Protected Health Information means information about an
individual's health, including information about payment for health care, and which either
identifies the individual or with respect to which there is a reasonable basis to believe the

1

information can be used to identify the individual. For purposes of this Agreement, Protected Health Information shall refer only to Protected Health Information received from the Plan or created or received by the Claims Administrator on behalf of the Plan Terms used, but not otherwise defined, in this Agreement shall have the same meaning as those terms in 45 CFR 160 103, 164.103, 164 304, and 164.501.

**1.2 Permitted Uses and Disclosures.**

(a)     The Plan may disclose Protected Health Information to the Claims Administrator (hereafter referred to as Business Associate) for purposes of treatment, payment, health care operations and data aggregation (all as defined by the Privacy Standards) and, subject to the terms of this Agreement, the Claims Administrator shall be permitted to use and disclose such Protected Health Information for these purposes

(b)     The Claims Administrator shall use or disclose the Protected Health Information only as authorized by this Agreement or as required by law, and shall not use or disclose the Protected Health Information in a manner that would violate the Privacy Standards if the use or disclosure were made by the Plan itself.

(c)     However, the Claims Administrator may use and disclose Protected Health Information to the extent necessary for the proper management and administration of its own business or to carry out its legal responsibilities, provided that any disclosure made for these purposes shall be made only if  (1) it is required by law, or (2) the Claims Administrator obtains reasonable assurances from the person to whom the information is disclosed that (a) the Protected Health Information will be held confidentially and used or disclosed only as required by law or for the purpose for which Claims Administrator disclosed it to such person, and (b) the person will notify the Claims Administrator if it becomes aware of any instance in which the confidentiality of the information is breached

**1.3 Responsibilities of the Plan.**

(a)     The Plan shall establish written practices and procedures for the use and disclosure of Protected Health Information in accordance with the Privacy Standards and shall provide the Claims Administrator with copies of all such practices and procedures. The Plan shall promptly provide the Claims Administrator with copies of any amendments or updates of such practices and procedures. Without limitation, the Plan shall provide the following:

(1) A copy of the Plan's Notice of Privacy Practices and all amendments.

(2) A copy of the Plan's procedures and protocols that establish standards limiting the amount of Protected Health Information that may be disclosed to or requested from the Claims Administrator to the amount reasonably necessary to achieve the purpose of the use or disclosure

(3) To the extent it may affect the Claims Administrator's duties under this Agreement, documentation of any restrictions to the use or disclosure of Protected Health Information to which the Plan has agreed in accordance with the Privacy Standards.

(4) To the extent it may affect the Claims Administrator's duties under this Agreement, documentation of any changes in, or revocations of, permission to use or disclose Protected Health Information by the individual who is the subject of the Protected Health Information

(b)     The Plan shall not request or authorize the Claims Administrator to use or disclose Protected Health Information in any manner that would not be permissible under the Privacy Standards if done by the Plan, provided, the Plan may request that the Claims Administrator provide data aggregation services Without limitation, the Plan shall not request or authorize the Plan to disclose Protected Health Information

(1) To employees of the sponsor of the Plan unless the Plan has received proper certification that the Plan documents have been amended as required by the Privacy Standards and the Plan sponsor has agreed to the restrictions imposed by the Privacy Standards   The Plan shall provide the Claims Administrator with a written list of the employees of the Plan sponsor and other individuals under the Plan sponsor's control who are engaged in administrative functions for the Plan and who are authorized to have access to Protected Health Information. Claims Administrator shall provide Protected Health Information only to those listed individuals  The Plan shall promptly provide any updates to the list

(2) To agents or subcontractors of the Plan sponsor unless such agent or subcontractor has entered into an agreement subjecting the agent or subcontractor to the same restrictions and conditions respecting the Protected Health Information that apply to the Plan sponsor  The Plan shall provide the Claims Administrator with a written list of such agents and subcontractors who have entered into such agreements, and Claims Administrator shall provide Protected Health Information only to those entities  The Plan shall promptly provide any updates to this list

(3) To any business associate unless a business associate contract is in effect in accordance with the Privacy Standards  The Plan shall provide the Claims Administrator with a written list of these business associates and other agents and subcontractors of the Plan sponsor who are authorized to have access to

Protected Health Information Claims Administrator shall provide Protected Health Information only to those listed entities. The Plan shall promptly provide any updates to the list

(4) In excess of the minimum necessary standards established pursuant to **Section 1.3(a)** hereof

(c)     The Claims Administrator is entitled to rely on any request or authorization by the Plan to use or disclose PHI as being made in accordance with the terms of this **Section 1.3**, but reserves the right to refuse to disclose Protected Health Information in its sole discretion if it reasonably believes that such disclosure may result in a violation of the Privacy Standards.

## 1.4 Unauthorized Uses and Disclosures.

In the event the Claims Administrator becomes aware of an unauthorized use or disclosure of Protected Health Information by itself or any of its agents or subcontractors, the Claims Administrator shall promptly notify the Plan, in writing, of such unauthorized use or disclosure The Plan and the Claims Administrator agree to act together in good faith to take reasonable steps to investigate and mitigate any harm caused by such unauthorized use or disclosure.

## 1.5 Appropriate Safeguards.

The Claims Administrator agrees that it will use appropriate safeguards to prevent the use or disclosure of Protected Health Information in any manner not authorized by this Agreement or applicable law.

## 1.6 Agreements with Agents and Subcontractors.

The Claims Administrator shall require each of its agents and subcontractors to which it discloses Protected Health Information to enter into a contract which requires compliance with the same restrictions and conditions that apply to the Claims Administrator under this Agreement Claims Administrator shall provide to the Plan, upon request, a written list of these agents and subcontractors.

## 1.7 Availability of Records and Information.

The Claims Administrator shall make Protected Health Information and its records available to the extent necessary to comply with the Privacy Standards requirements to provide access to individuals upon request, to permit an individual to amend his records; to permit accounting of disclosures, or to comply with the terms of an audit by the Health and Human Services, all as set out below Any such access shall be provided within 60

business days of receipt of written request by an authorized person, and shall be provided during normal business hours

(a) Upon receipt of written instruction by the Plan, Claims Administrator will provide access to Protected Health Information in a designated record set to the Plan or to the individual to whom the Protected Health Information pertains, provided the Plan certifies that such disclosure is in accordance with the individual's right under the Privacy Standards to have access to his own Protected Health Information. If the Plan determines, and notifies the Claims Administrator in writing, that the Protected Health Information is subject to amendment in accordance with the Privacy Standards, the Claims Administrator shall make any amendments to such Protected Health Information requested by the Plan or by such individual within 60 days following receipt of the Plan's written instruction

(b) Upon receipt of written instruction by the Plan, Claims Administrator will provide an accounting within 60 days of any disclosures made with respect to an individual's Protected Health Information during the preceding six years to the extent required by the Privacy Standards. Claims Administrator shall only be responsible to account for any disclosures made by it, its agents and subcontractors Claims Administrator shall not be responsible to account for any disclosures made by other entities that may be reflected in its records

(c) Claims Administrator will make its privacy practices, books and records, as they apply to the Protected Health Information, available to the extent necessary to comply with an audit by the Secretary of Health and Human Services in accordance with the Privacy Standards.

**1.8 Termination of Contract.**

Notwithstanding any other conditions on termination of this Agreement, the Plan may terminate this Agreement if the Claims Administrator engages in a pattern of activity or practice that constitutes a material breach of its obligations under this Agreement

Upon termination of this Agreement, the Claims Administrator shall return or destroy all Protected Health Information then in its possession which was received from, or created or received by, the Claims Administrator on behalf of the Plan, and shall not retain any copies of such Protected Health Information, provided, if return or destruction is not feasible, the Claims Administrator agrees to extend the protections of this Agreement to the Protected Health Information and limit further use and disclosure to those purposes that make the return or destruction infeasible  The Claims Administrator may charge a fee if it is required to maintain any such records following termination of this Agreement

**1.9 Miscellaneous**

(a)  *Regulatory References* A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended, and for which compliance is required.

(b)  *Amendment* The Parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Plan to comply with the requirements of the Privacy Rule and the Health Insurance Portability and Accountability Act, Public Law 104-191

(c)  *Survival* The respective rights and obligations of Business Associate under Section **1.8** of this Agreement shall survive the termination of this Agreement

(d)  *Interpretation.* Any ambiguity in this Agreement shall be resolved in favor of a meaning that permits the Plan to comply with the Privacy Rule

(e)  *Indemnification.* The Plan hereby agrees to indemnify, defend and hold harmless the Claim Administrator, its officers, members, agents, employees, contractors, and personnel from and against any and all claims, demands, suits, actions, losses, expenses, costs (including reasonable attorney fees), obligations, damages, deficiencies, causes of action, and liabilities (collectively "Claims") incurred by the Plan as a result of, or that are proximately caused by, (i) any breach of the duties and obligations of the Claim Administrator hereunder, including, employees, subcontractors or agents, and (ii) any act or conduct of the Claim Administrator, its employees, subcontractors or agents, adjudged to constitute fraud, misrepresentation or violation of any law, including without limitation, violation of any statute or regulation applicable to the Claim Administrator pursuant to this Agreement


**FCE Benefit Administrators, Inc.**

**(Claims Administrator)**

Authorized Signer

Name  Gary Beckman

Date       9/15/2008


**Training, Rehabilitation & Development Institute, Inc. Health and Welfare Plan**
**(Plan)**

Authorized Signer

Name  Juan Rangel

Date  September 15, 2008

EXHIBIT 'D'
TO
THE HEALTH AND WELFARE PLAN
FUNDING POLICY
FOR
THE HEALTH & WELFARE PLAN
OF
TRAINING, REHABILITATION & DEVELOPMENT INSTITUTE, INC.

Training, Rehabilitation & Development Institute, Inc, as the sponsoring employer ("Employer") hereby makes this Funding Policy, effective as of October 1, 2008, under Section 2 3 of the Trust Agreement ("Trust") for the Health & Welfare Plan ("Plan") of Employer to implement the funding policy required under Section 2.3 of the Trust, and in accordance with Article II of the Third Party Administrator Agreement. The principal purpose of this Funding Policy is to insure that the Trust will have sufficient, readily available liquid assets in order to meet its obligations for payments required under the Plan and Trust   Employer has determined that in order to insure that the Plan has sufficient, readily available assets in order to meets its obligations to make payments under its terms, Plan assets should be invested as follows.

The Plan will provide death, accidental death and dismemberment ("AD&D"), medical, dental, vision and related health and welfare benefits for certain eligible employees of Employer and their eligible dependents   Death benefits and AD&D benefits shall be funded through the purchase of insurance policies providing such benefits   If the Plan provides long term disability ("LTD") benefits, such LTD benefits shall be funded through the purchase of insurance policies providing such benefits.   Medical and prescription drug benefits and short-term disability ("STD") benefits shall be funded through a combination of payments from the general assets of the Trust and the purchase of one or more stop-loss insurance policies, health insurance policies, or STD insurance policies   Employer Sponsor of the Plan will make periodic contributions to the Plan to fund those benefits and other Plan expenses in accordance with Article II of the Third Party Administrator Agreement   Necessary contributions may differ from the amount Employer is paying or is required to pay for its Employees.

Because the primary purpose of the Plan is to provide short-term health and welfare benefits, the primary investment strategy to be followed by the Trustee must stress the short-term liquidity needs and short-term stability of Trust assets

Because of the need for liquidity in order to pay medical, prescription drug, and short-term disability (if included) benefits below the stop-loss threshold and to pay Plan administrative expenses, all Trust assets other than those used to purchase insurance shall be invested as follows   They shall be invested in an interest-bearing money market account so as to enable the Trustee to move funds on a daily basis to a checking account to cover claims and expenses.   If the money market account accumulates excess funds, then the Trustee shall purchase certificates of deposit with a maturity of not more than thirteen (13) months

Employer reserves the right to change this Funding Policy on 30 days' prior written notice to Trustee

## AMENDMENT TO THE HEALTH & WELFARE PLAN

*WHEREAS*, Training, Rehabilitation & Development Institute, Inc. ("Employer") sponsors the Training, Rehabilitation & Development Institute, Inc Health & Welfare Plan (the "Plan"),

*WHEREAS*, Section 9.1 of the Plan reserves to the Employer the right to amend the Plan;

*WHEREAS*, the Employer now deems it advisable to amend the Plan, effective January 1, 2014;

*NOW, THEREFORE*, the Employer amends the Plan effective January 1, 2014, in the following particulars:

1.   Section 4.5 of the Plan shall be amended to read as follows:

"4.5  Bonding.  An ERISA bond or any other bond, as required by law to cover the Plan Administrator, will be secured.   To the extent any individual or institution other than the Plan Administrator and Employer handles plan assets, such individual or institution shall secure its own ERISA bond, and provide proof thereof upon request to the Employer "

2.   Section 1 9(e) of Exhibit C to the Plan shall be amended to read as follows:

"(e)   Indemnification.   The Claim Administrator hereby agrees to indemnify, defend, and hold harmless the Plan, Employer, its officers, members, agents, employees, contractors, and personnel from and against any and all claims, demands, suits, actions, losses, expenses, costs (including any reasonable attorney's fees), obligations, damages, deficiencies, causes of action, and liabilities incurred by the Plan or Employer as a result of, or that are approximately caused by any breach of the duties and obligations of the Claim Administrator hereunder, including employees, subcontractors or agents, and any act or omission of the Claim Administrator, its employees, subcontractors or agents, adjudged to constitute any violation of law, including, without limitation, violation of any statute or regulation applicable to Claim Administrator pursuant to this Agreement "

Initials: Employer _____  FCE _____      Effective Date. 01 January 2014                    Page 1 of 2

Amendment to The Health & Welfare Plan

*IN WITNESS WHEREOF*, the undersigned have hereunto signed this Amendment

TRAINING, REHABILITATION & DEVELOPMENT
INSTITUTE, INC.

By: _____

Juan Rangel

Its.    President & CEO _____

Date. _____3/14/14_____

FCE BENEFITS ADMINISTRATORS, INC.

By: _____

Gary Beckman

Its: ___PRESIDENT, CEO_____

Date    5-14-2014

☐ ORIGINAL

2014 0027

Initials: Employer _____  FCE _____    **Effective Date: 01 January 2014**    Page 2 of 2

Exhibit 3

# THIRD PARTY ADMINISTRATOR AGREEMENT

This Agreement lists the administrative services that FCE will provide as Third Party Administrator. Moreover, the Agreement distinguishes between administrative duties delegated to FCE and those retained by the Employer.

## THIRD PARTY ADMINISTRATOR AGREEMENT

THIS AGREEMENT is made by and between Training, Rehabilitation & Development Institute, Inc. (Employer) and FCE Benefit Administrators, Inc (TPA) each of which is more fully described in the Adoption Agreement of which this agreement is a part.

## ARTICLE I
## DEFINITIONS

The capitalized terms, words and phrases used in this Agreement will have the same meaning as those terms, words and phrases as defined in the Plan.

## ARTICLE II
## DUTIES OF EMPLOYER

(a) <u>Employer Contributions</u>   Employer shall make Contributions to the Trust for all Employees covered under the Plan

(b) <u>Employer Records</u>   Employer shall provide to TPA all Earned Hours Records for each Employer Contribution. Alternatively, if contributions are paid as a monthly lump sum, Employer shall provide notice of all new hires who shall become Plan participants, and terminees who were Plan participants, monthly.   The contribution rate structure/benefit design for Plan participants has been actuarially determined based on the assumption that all Employees within a specified group will participate in the Plan   If all Employees within a specified group do not participate in the Plan, Employer must inform FCE in writing timely and the contribution rate structure/benefit design for the group may be revised to minimize any potential negative effect on the Plan as a result of adverse selection. FCE reserves the right to request proof of participation by all Employees within a specified group.

(c) <u>Contribution Due Date.</u>   The Employer shall be solely responsible for the accuracy of all Employer Contributions and related Earned Hours Records, and shall transmit them to TPA to be received by TPA no later than the 10th day of the month following the month for which the Fringe Benefit Amounts were earned. Alternatively, if contributions are paid as monthly invoiced amounts, contributions are due by the 1st of the month for

1

© Copyright 2004 FCE Benefit Administrators, Inc   All Rights Reserved

which coverage is effective. The Employer shall provide the TPA with notice of any newly eligible employee prior to affected employee's coverage date, but no later than the last day of the month in which such newly hired employee becomes eligible for coverage. The Employer shall provide the TPA with notice of any terminated participant no later than the last day of the month in which such covered employee was terminated.

(d) <u>Penalty for Late Contributions.</u> If any Contribution becomes more than three months delinquent, then the TPA or Trustee may charge a delinquency penalty equal to the interest rate that the Money Market account would earn if contributions were not delinquent

(e) <u>Failure to Provide Information</u> In the event that a covered participant's employment has terminated, and as a result of the Employer's failure to provide the information required under II(c) above, the TPA or trustee has authorized and/or paid for benefits for such participant after the date on which such participant's coverage under the Plan should have terminated, or, a newly eligible employee has become effective for coverage under the Plan, but because the Employer has failed to provide the information required under II(c) above, the TPA or trustee has failed to authorize or pay for benefits for such newly eligible employee· all cost, liability and expense associated with such coverage, or the failure to provide such coverage, shall be borne by the Employer

(f) <u>Suspension of Benefits for Failure to Provide Contributions.</u> Except to the extent that benefits are provided to Employees through an insurance policy, if Employer fails to make the total Contribution required by the due date under II(c) above, and fails to remedy the delinquency within two weeks after receiving two notices of such delinquency from TPA, then TPA will suspend payment of any or all benefits under the Plan incurred after the last month for which Contributions were made until Contributions are brought current, and TPA will notify all Employees affected by that suspension. In the event that benefits are provided through an insurance policy covering eligible Employees and Employer fails to make the total Contribution required by the due date under Section II(c) above, and fails to remedy the delinquency within two weeks after receiving two notices of such delinquency from TPA, then TPA will suspend payment of premiums for such benefits until Contributions are brought current, and TPA will notify all Employees affected by that suspension

(g) <u>Design of Benefits</u> The Employer will be the Plan Administrator. The Plan Administrator shall have the duty, authority and responsibility to authorize and approve the design of benefits under the Plan, and manage the investment of the Trust Fund, directly or through an Investment Manager, in a manner which assures that the Employer's Contributions required under Article II hereof are sufficient to adequately fund the Trust to pay all costs of providing benefits, paying premiums, and expenses under the Plan The Plan Administrator shall have the duty, authority and responsibility, based upon the recommendations from the TPA, to increase, decrease, add or delete Plan benefits under certain conditions or circumstances. Those conditions or circumstances include but are not limited to:

© Copyright 2004 FCE Benefit Administrators, Inc All Rights Reserved

1.  a substantial change in employee hours and/or contributions;
2.  an unexpected, unplanned benefit utilization of the plan,
3.  a change in reserve requirements,
4.  a substantial change in the cost to administer the plan or in the cost of reinsurance or other expenses properly chargeable to the plan; or
5.  a change in the location of the service contract(s).

The Plan Administrator shall have the power in its sole and absolute discretion to determine when Plan benefit modifications are required  The Plan Administrator shall furnish a summary of any material reduction in covered services or benefits to all affected participants of the Plan no later than 90 days after the date of adoption of the modification or change

(h) Dispositions of Unallocated Asset   In addition to its other rights and obligations hereunder, the Plan Administrator shall have the authority, from time to time, to establish guidelines for the disposition of unallocated asset, as hereinafter defined, to provide additional benefits to Participants and beneficiaries hereunder, either for the balance of the then current Plan Year, or for a shorter period thereof   For purposes hereof, "unallocated asset" shall mean funds held in this Trust that are in excess of the following amounts paid or required to be retained by the Trust

1.  claims,
2.  insurance premiums,
3.  plan expenses,
4.  aggregate deductible or hold back amounts, as those terms are defined in the stop loss insurance policies owned by the plan;
5.  prepaid contributions/run out liability, and
6.  necessary trust operating capital

In exercising its authority to establish guidelines for the disposition of unallocated asset to provide additional benefits hereunder, either for the balance of the then current Plan Year, or for a shorter period thereof, the Plan Administrator shall not exercise its discretion in a discriminatory manner.  In the event that the Plan Administrator adopts guidelines for the disposition of unallocated asset to provide additional benefits hereunder, the Plan Administrator shall provide the Participants and beneficiaries under the Plan with written notice of such additional benefits, and a reasonable period of time within which to submit a claim for payment of such benefits.  In addition, the Plan Administrator shall provide the Trustee and the TPA with written notice of such guidelines, as well as with written directions to pay such benefits, in such amounts, for claims incurred during such period(s) of time, and upon such terms and conditions as the Plan Administrator may designate, and any other guidance necessary and appropriate in order to implement such guidelines and provide such additional benefits

(i)     The Employer as Plan Administrator shall

3

© Copyright 2004 FCE Benefit Administrators, Inc  All Rights Reserved

1   Administer claims for benefits under the Plan, except for benefits provided to
    Employees through an insurance policy  TPA will assist the Plan
    Administrator by performing the non-discretionary initial processing of claims
    under the express terms of the Plan,

2.  File any and all reports to and tax returns for governmental authorities and
    disclosures to Employees required under applicable law for the Plan and Trust
    based on Earned Hour Records and other pertinent information  TPA will
    assist Plan Administrator in the preparation and filing of such documents
    based on information provided by the Employer or Plan Administrator.

(ii)   Duties delegated to TPA·

1   To keep on Employer's behalf all books of account, records and other data
    necessary to administer the Plan on Employer's behalf and to meet the
    reporting and disclosure requirements of applicable law; and

2   Prepare and submit aggregate reports concerning paid claims to the
    reinsurance or stop loss carrier engaged by the Plan Administrator in
    accordance with the terms of such agreement

TPA shall also assist Plan Administrator in designing benefits under the Plan and benefit
modifications described in Article II (g)

## ARTICLE III
## SERVICES OF THIRD PARTY ADMINISTRATOR

(a) Claims Administration.  Services, to the extent applicable to the Plan and necessary
for administration of the Plan, may include

1   accepting and receiving all requests for benefit payments under the Plan,
2   determining on a non-discretionary basis, the entitlement to Plan benefits for each
    request made for benefits under the express terms of the Plan and under cost
    control standards and procedures and practices established by FCE and approved
    in writing by Employer,
3   maintaining EDI programming to expedite claims payment;
4   maintaining Provider Faxback program to expedite benefit information to
    requested benefit information;
5   approving, processing and paying medical, prescription, dental, vision, short term
    disability, death, AD&D, and other applicable benefit claims,
6.  re-pricing of medical, dental, and vision claims in accordance with PPO Network
    contracts,
7.  giving written notice to any person of any denial of benefits after a request has
    been made and the rights of appeal of that denial, each in a manner agreed to

4

© Copyright 2004 FCE Benefit Administrators, Inc  All Rights Reserved

between Employer and FCE and which complies with the claims procedure requirements of Section 503 of ERISA;

8   preparing and transmitting a copy of the Explanation of Benefits (EOB) to participants for each processed claim;

9.  posting employee claims history to online administration system for client access/review;

10  coordinating with service providers, such as the PPO Network and/or the UR/UM provider,

11  coordinating benefits between FCE plans and other benefit plans;

12. identifying and describing benefits to providers;

13  explaining benefits to participants and their advocates,

14  processing and paying Medicaid, Medicare, Champus and Tricare reimbursement demands;

15  administering and collecting subrogation and other third party obligations; and

16  monitoring, identifying, preparing, filing, and recovering stop loss obligations

If an appeal is requested, TPA will assist Employer in providing all necessary information on the claim for a decision   Employer has the power in its sole and absolute discretion to make the final decision on entitlement to Plan benefits for any request   To the extent that any Plan benefits are provided by an Insurer under an insurance policy covering Employees of the Employer, the Insurer will have the power in its sole and absolute discretion to interpret the provisions of its insurance policy including, but not limited to, eligibility for coverage, eligibility for benefits, benefits amounts, render decisions on appeals, and all other matters relating to such insurance policy

FCE will have no fiduciary obligations under the Plan under or on account of this Agreement   All discretionary authority under the Plan resides with the Employer and Plan Administrator

(b) Compliance Administration   Services, to the extent applicable to the Plan and necessary for administration of the Plan, may include

1   preparing and disseminating certificates, booklets and policies,

2   preparing and disseminating ERISA specimen documents,

3   importing plan documents and employee enrollment documents into database for internal and external (HR) access;

4.  preparation and transmission of HIPAA Certificate of Creditable Coverage;

5   providing COBRA administration services (includes providing Initial Cobra letter, Qualifying Event Notification, and ongoing billing);

6.  FMLA compliance services,

7   PHI compliance services,

8.  ongoing distribution of federally required Medicare Part D Communication;

9   audit support,

10  secured website for HR support, and

11  Department of Labor investigation support.

5

© Copyright 2004 FCE Benefit Administrators, Inc   All Rights Reserved

1145 001 #791512

(c) <u>Plan and Cost Management</u>:  Services, to the extent applicable to the Plan and
necessary for administration of the Plan, may include:

1   actuarial/underwriting evaluations;
2   designing initial benefit schedules,
3.  tracking benefit use and subsequent design modifications,
4.  preparing and disseminating loss ratio reports, proposals, and illustrations;
5.  establishing and maintaining relationships with Provider Networks;
6   managing and administering insurance and reinsurance coverage for plans,
7.  conducting ongoing coordination with insurance and reinsurance underwriters;
8   reporting employer's allocation to qualified pension,
9   prepare client invoices for Corporate or Exempt plans;
10  programming database to reflect new sites and plan changes (Plan Building); and
11. programming Online Administration System for client access to employee data
    and reporting.

(d) <u>Eligibility Administration</u>.  Services, to the extent applicable to the Plan and
necessary for administration of the Plan, may include

1.  reconciling contributions and benefit coverage appropriate to employee's work
    schedule to earned hours payroll record as required by regulating Contracting
    Agency;
2.  updating the participant database each payroll period with each employee's fringe
    qualified earned hours,
3.  maintaining FTP site for receipt of electronic hours report files from clients and
    payroll vendors,
4.  processing new hire enrollment information and Employee termination/COBRA
    information,
5.  updating employee enrollment data to reflect plan changes and new elections,
6   preparing and transmitting participant ID Cards,
7.  preparing and transmitting daily data transfer to outside prescription drug card
    and Network providers, and
8   internal and external (HR) access

(e) <u>Plan Representative Services/Enrollment Services</u>:  Services, to the extent applicable
to the Plan and necessary for the administration of the Plan, may include

1.  site visits to explain benefits and manually enroll initial participant group; and/or,
    call center enrollment support of initial group, and/or, electronic enrollment of
    initial group, and/or, site visits to explain benefits and electronically enroll initial
    group,
2   facilitation of information necessary to obtain and disseminate employee ID
    cards,
3   completion of Group Information Form for each covered contract site and timely
    updates to same reflecting changes in contributions, contact personnel, contact
    information and the like,

6
© Copyright 2004 FCE Benefit Administrators, Inc  All Rights Reserved

4. periodic site revisits to repeat the benefit enrollment and presentation process due to employee and management turnover; and/or, mid-benefit-year electronic editing of employees benefit account

5. periodic site revisits to repeat the benefit enrollment and presentation process due to open enrollment; and/or, call center re-enrollment support during open enrollment period; and/or, electronic re-enrollment during open enrollment period; and/or, site revisits to explain benefits and electronically enroll during open enrollment period;

6 meetings on behalf of the employer, plan, or both with government agencies, collective bargaining representatives, in-house and outside legal counsel, and the like.;

7. telephonic and personal accessibility to aid and assist employees and managers to understand and use the benefit plan;

8. transmittal of employee communication forms and documents,

9. interfacing between employer and plan participants to facilitate plan related communication and resolve issues;

10. employee advocacy on claims coverage issues, and general on-site trouble shooting

(f) Discretionary Authority.  Except as specifically authorized in this Agreement, FCE will act in all matters only on the express written direction of Employer  At no time will FCE exercise any discretion or independent authority with respect to the performance of its services under this Agreement and no such independent authority or discretion has been granted to FCE by Employer under this Agreement or any other agreement.

(g) Disclosure.  FCE Benefit Administrators, Inc. (Steve Porter and/or Gary Beckman) may receive commissions or administrative fees from insurance companies and benefit providers associated with this Plan.  Commissions or administrative fees received will be disclosed in accordance with ERISA requirements.

(h) Independent Legal Advice  FCE will not provide legal or tax advice to Employer and Employer understands and confirms that FCE has advised it to seek the advice of independent legal, tax, accounting or other advisor if Employer has any questions about the Plan, Trust, SPD or terms and conditions for services by FCE as third party administrator  Employer acknowledges that it will neither rely, nor act solely or exclusively, on information provided by FCE to Employer under this Agreement

## ARTICLE IV
## COVENANTS OF EMPLOYER

(a) Payment of Administrative Fees  Employer authorizes the payment to FCE and/or other named service providers of the administrative charges specified in the Fee Schedule described in Exhibit 'A' of the Adoption Agreement.  In the event FCE or Trustee is requested or required to provide services or produce information or materials other than that described in the Trust and/or TPA agreements, FCE and/or Trustee shall be entitled

7

© Copyright 2004 FCE Benefit Administrators, Inc  All Rights Reserved

1145 001 #791512

to compensation from the Trust or Employer for the reasonable costs associated with providing such services and producing such information and materials, including but not limited to copying, printing, postage, professional time, travel expenses, and the like.

(b) <u>Primary Responsibility</u>: Except as specifically limited by this Agreement, Employer will have exclusive authority and responsibility for the Plan, its operation and compliance with applicable law.

(c) <u>Furnish Necessary Information</u>   Employer will furnish to FCE all Employee, Participant and Dependent information necessary to determine eligibility for benefits under the Plan. Employer will also provide FCE with information about events affecting Employees, Participants and their Dependents, which would entitle them to a notice of rights to continuation of health benefits under the Plans under COBRA

(d) <u>Indemnity by Employer</u>:  Employer hereby agrees to indemnify, hold harmless and assume the defense of FCE, its directors, shareholders, officers, employees, agents and attorneys ("FCE Parties") from or against any claim, liability, loss, damage, fine, penalties and costs, including reasonable attorney's fees, ("Claims") which any FCE Party may incur to the extent that Claim arises from (a) any failure of Employer to comply with any covenant or obligation of Employer under this Agreement, the Plan or Trust or (b) any misrepresentation or breach of warranty by Employer under this Agreement, the Plan or Trust   If Employer fails to do so, FCE may compromise and settle or defend against any Claim, and Employer will be obligated to indemnify and hold harmless TPA for all costs of defense, compromise and settlement, including any judgments incurred by or rendered against TPA, which arise out of the Claim   The provisions of this Section will survive the termination of this Agreement and the Plan

(e) <u>Withholding</u>:  Employer will comply with applicable federal and State income and payroll withholding laws for fringe benefit contributions and employee wage deductions Unless otherwise notified in writing by Employer, TPA is authorized by Employer to assume that each recipient of benefits under the Plan is a resident of the United States or if not a resident is a United States citizen

(f) <u>Insurer</u>   To the extent that any Plan benefits are provided by an Insurer under an insurance policy covering Employees of the Employer, the Insurer will have the power in its sole and absolute discretion to interpret the provisions of its insurance policy including, but not limited to, eligibility for coverage, eligibility for benefits, benefits amounts, decisions on appeals, and all other matters relating to such insurance policy.

(g) <u>Budgeted Expenses</u>.  Employer authorizes the payment at cost of certain expenses that are encountered in the ordinary and necessary operation of the Plan and Trust, including, but not limited to, printing of employee communication and enrollment materials, Plan annual auditing and tax return preparation, postage for transmitting employee communication and enrollment materials, and the like

© Copyright 2004 FCE Benefit Administrators, Inc  All Rights Reserved

1145 001 #791512

## ARTICLE V
## COVENANTS OF TPA

(a) <u>Professional Liability Insurance</u>· TPA will maintain professional errors and omissions insurance in amounts consistent with and customary for an administrator of its size

(b) <u>No Fiduciary Status</u>· Employer has the exclusive authority to control and manage the operation of the Plan and will be the Plan Administrator and named fiduciary as defined in ERISA TPA will not be a fiduciary under the Plan nor will this Agreement be deemed to confer upon TPA any (1) authority or control over the management and control of the Plan or (2) responsibility for the validity or interpretation of the terms of the Plan

(c) <u>Continuing Liability of Employer and Trustee</u> Neither this nor any other agreement will relieve Employer or other designated fiduciaries, including any Trustee, of any of the responsibilities or liabilities imposed by ERISA

(d) <u>Reliance on Employer</u> TPA will rely for its performance of its services under this Agreement solely on the information submitted to it by Employer. TPA is not responsible for any penalties, sanctions, taxes or any other liability due to the failure of Employer to submit accurate information to TPA on a timely basis

(e) <u>No Liability for Acts of Prior Administrator</u> TPA will not be liable or responsible for anything done or omitted in the administration of the Plan prior to the Effective Date, nor, except on Employer's written direction, will TPA be required to inquire into or take any action concerning the acts of any prior administrator

## ARTICLE VI
## AMENDMENT AND TERMINATION

(a) <u>Amendment</u> No amendments to this Agreement will be binding unless executed in writing by FCE and Employer, and no change in any Service Provider to the Plan and Trust will be effective unless approved in writing by both FCE and Employer

(b) <u>Term</u>: The term of this Agreement will begin on the effective date of this Agreement and end when terminated by either party on 60 days prior written notice to the other party, so long as this Agreement ends on the anniversary of the insurance contract(s) covering the Plan benefits.

(c) <u>Responsibilities on Termination</u>· On any termination of this Agreement, FCE will complete the processing of all requests for benefit payments under the Plan which are received by FCE prior to the effective date of termination except FCE will not be

9

© Copyright 2004 FCE Benefit Administrators, Inc All Rights Reserved

obligated to process benefit payment requests if Employer fails to fund benefit payments until all funds requested by FCE have been furnished

(d) <u>Benefits for Unallocated Assets</u>  In addition to its other rights and obligations under the Plan and this Agreement, Employer will have the authority, from time to time, to establish guidelines for the disposition of Unallocated Assets to provide additional benefits to Participants and Beneficiaries under the Plan, either for the balance of the then current Plan Year or for a shorter period.  In exercising its authority to establish guidelines for the disposition of Unallocated Assets to provide additional benefits under the Plan and this Agreement, either for the balance of the then current Plan Year, or for a shorter period, Employer will not exercise its discretion in a discriminatory manner  If Employer adopts guidelines for the disposition of Unallocated Assets to provide additional benefits under the Plan and this Agreement, Employer will provide Participants and their beneficiaries under the Plan with written notice of those additional benefits, and a reasonable period of time within which to submit a claim for payment of those benefits.  In addition, Employer will provide to Trustee and to FCE written notice of those guidelines, as well as with written directions to pay those benefits, in those amounts, for claims incurred during those period(s) of time, and on those terms and conditions as Employer may designate, and any other guidance necessary and appropriate in order to implement those guidelines and provide those additional benefits.

## ARTICLE VII
## MISCELLANEOUS

(a) <u>Captions</u>·  The captions and headings of the Sections and subsections of this Agreement are for convenience of reference only and are not to be used in the interpretation of this Agreement.

(b) <u>Late COBRA Notification</u>  While all parties will make every effort to make sure that information is timely transmitted regarding employee terminations and that COBRA election notices are timely sent, in the event that a COBRA election notice is not timely sent thereby causing an otherwise qualified employee to elect COBRA coverage after the required election period, any party in interest to the Plan (Employer/Plan Sponsor, Plan Administrator, Third Party Administrator or Trustee) may upon discovery of such unintended delay pay COBRA premium to the Plan on behalf of the affected former Plan participant from the date coverage under COBRA would have first been effective through the date approximately forty-four days prior to the date an election notice is mailed, and the Plan shall be responsible for paying claims incurred during such time period.

(c) <u>Additional Documents</u>  Each party to this Agreement agrees to cooperate with the other in good faith and will, on demand, execute any other documents or instruments necessary or convenient to carry out the provisions and intent of this Agreement.

© Copyright 2004 FCE Benefit Administrators, Inc  All Rights Reserved
1145 001 #791512

(d)Entire Agreement   This Agreement contains the entire agreement among the parties for the subject matter of it and supersedes all prior and contemporaneous oral and written agreements, understandings and representations among the parties

(e) Attorneys' Fees and Costs   If any action in law or in equity, or any submission to arbitration, is necessary to enforce or interpret the terms of this Agreement, or the rights and duties of the parties, the prevailing party will be entitled, in addition to any other relief that may be granted, to recover all costs and expenses incurred in connection with that action, including reasonable attorneys' fees and costs

(f) Governing Law and Venue   This Agreement will be governed by the internal laws of the State of California except to the extent preempted by ERISA, COBRA or other applicable federal law and the venue for resolving any dispute under this Agreement will be San Mateo County, California.

(g) Assignment   Neither this Agreement nor any interest in it will be assignable by either party without the prior written consent of the other party

(h) Successors and Assigns   Subject to any limit on assignment in this Agreement, this Agreement will inure to the benefit of and bind the respective successors in interest, assigns, heirs, and executors and administrators of the parties to this Agreement

(i) Severability   If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions will nevertheless continue in full force and effect without being impaired or invalidated in any way.

(j) Survival of Representations   All representations, warranties, covenants, and agreements made in this Agreement by the parties will survive the closing of this transaction until satisfied in full

(k) Construction.   As required by the context of this Agreement, each pronoun and parenthetical reference and any defined terms will mean and be construed to include the singular and plural and the masculine, feminine and neuter

(l) Waiver.   No waiver of any of the provisions of this Agreement will be deemed or will constitute a waiver of any other provision, nor will any waiver constitute a continuing waiver   No waiver will be binding unless executed in writing by the party making the waiver.

(m) Notices   Any notice, payment or other communication required or permitted under this Agreement will be deemed effective when personally delivered or deposited in the United States mail, postage prepaid and addressed to Employer at the address provided in the Trust Agreement or to FCE at 887 Mitten Road, Burlingame, CA 94010-1303. Either party may change address for purposes of this Section by sending a notice of that changed address in accordance with this Section.

11

© Copyright 2004 FCE Benefit Administrators, Inc   All Rights Reserved

IN WITNESS WHEREOF. the Employer acknowledges receipt of the information disclosed and approves the proposed transaction, and has executed this Third Party Administrator Agreement and Exhibits thereto, which consists of the ESI Client Agreement, this 15th day of September, 2008 to be effective for contributions beginning October 1, 2008

<u>EMPLOYER/PLAN SPONSOR/PLAN ADMINISTRATOR</u>

**TRAINING, REHABILITATION & DEVELOPMENT INSTITUTE, INC.**
A Texas Corporation

By: _____
Juan Rangel
President/CEO

<u>THIRD PARTY ADMINISTRATOR</u>

**FCE BENEFIT ADMINISTRATORS, INC.**
A California Corporation

By: _____
Gary Beckman
President/CEO

12

© Copyright 2004 FCE Benefit Administrators, Inc   All Rights Reserved

1145 001 #791512

Exhibit 4

## AMENDMENT TO THIRD-PARTY ADMINISTRATOR AGREEMENT

**WHEREAS,** Training, Rehabilitation & Development Institute, Inc. ("Employer") and FCE Benefit Administrators, Inc ("TPA") have executed a Third-Party Administrator Agreement (the "TPA Agreement");

**WHEREAS,** Article VI(a) provides that the TPA Agreement by written amendment adopted by TPA and Employer;

**WHEREAS,** TPA and Employer now desire to amend the TPA Agreement, effective January 1, 2014;

**NOW, THEREFORE,** the TPA Agreement is amended in the following particulars:

1. Article II(g) shall be amended to read as follows:

    "(g) <u>Design of Benefits</u>. The Employer will be the Plan Administrator. The Employer, acting as settlor, shall have the duty, authority and responsibility to authorize and approve the design of benefits under the Plan, and in conjunction with the Trustee, manage the investment of the Trust Fund, directly or through an Investment Manager, in a manner which assures that the Employer's Contributions required under Article II hereof are sufficient to adequately fund the Trust to pay all costs of providing benefits, paying premiums, and expenses under the Plan The Employer shall have the right to increase, decrease, add or delete Plan benefits under certain circumstances Those conditions or circumstances include, but are not limited to.

    1   a substantial change in employee hours and/or contributions;
    2.  an unexpected, unplanned benefit utilization of the Plan,
    3.  a change in reserve requirements;
    4   a substantial change in the cost to administer the Plan or in the cost of reinsurance or other expenses properly chargeable to the Plan; or
    5   a material change in the location of the service contract(s).

    The Employer shall have the power in its sole and absolute discretion to determine when Plan benefit modifications are required.   The Plan Administrator shall furnish a summary of any material modification in covered services or benefits to all affected participants of the Plan at least sixty (60) days prior to the date on which the modification will become effective."

2. Article III, Section (b)(11) shall be amended to read as follows.

    "(11) Department of Labor and/or Internal Revenue Service Investigation or Audit Support."

Initials. Employer _____ TPA _____ **Effective Date: 01 January 2014**                                                                Page 1 of 3

Amendment to Third Party Administrator Agreement

3.      Article IV(d) shall be amended to read as follows:

"(d) Indemnity by Employer. Employer hereby agrees to indemnify, hold harmless and assume the defense of FCE, its directors, shareholders, officers, employees, agents and attorneys ("FCE Parties") from or against any claim, liability, loss, damage, fine, penalties and costs, including reasonable attorney's fees ("Claims") which any FCE Party may incur to the extent that the Claim arises from (a) any failure of Employer to comply with any covenant or obligation of Employer under the TPA Agreement, the Plan or Trust, or (b) any misrepresentation or breach of warranty by Employer under this TPA Agreement, the Plan or Trust. FCE hereby agrees to indemnify, hold harmless and assume the defense of Employer, its directors, shareholders, officers, employees, agents and attorneys ("Employer Parties") from or against any claim, liability, loss, damage, fine, penalties and costs, including reasonable attorney's fees ("Claims") which Employer Parties may incur to the extent that the Claim arises from (a) any failure of FCE Party to comply with any covenant or obligation of FCE Party under this TPA Agreement, the Plan or Trust, or (b) any misrepresentation or breach of warranty by FCE under this TPA Agreement, the Plan or Trust, or (c) FCE's negligent acts or negligent omissions, willful misconduct, or use or access of any PHI not in compliance with applicable law.

The indemnified party shall notify the indemnifying party in writing promptly upon learning of any Claim for which indemnification may be sought hereunder, and shall tender the defense of the Claim to the indemnifying party and afford such indemnifying party with a reasonable opportunity to comment on such defense   No party shall indemnify the other party with respect to any Claims settled without the indemnifying party's written consent, which shall not be unreasonably withheld."

4.      Article V(a) shall be amended to read as follows:

"(a) Professional Liability Insurance. TPA will maintain professional errors and omissions insurance in an amount not less than One Million Dollars ($1,000,000 00) per occurrence, and Three Million Dollars ($3,000,000.00) aggregate."

A new Section (f) to Article V shall be added, to read as follows·

"(f) Covenants of FCE Benefit Administrators   FCE will provide data fully satisfying the requirements of ERISA and the Code, including fee disclosure regulations and any information needed for Schedule C and Schedule A. FCE will provide all IRS forms required with respect to the Plan and Trust and advise Employer as to any required filings and distributions of such forms.    FCE covenants that it is authorized to provide the services

Amendment to Third Party Administrator Agreement

contemplated in the TPA Agreement under applicable state law    FCE agrees to pay for any ERISA bonds it is required to have covering the Plan and Trust "

5.    Article VI(b) shall be amended to read as follows

"(b)   Term   The term of this TPA Agreement will begin on the effective date of this Agreement and end when terminated by either party on sixty (60) days prior written notice to the other party."

*IN WITNESS WHEREOF*, the undersigned have hereunto signed this Amendment.

TRAINING, REHABILITATION & DEVELOPMENT INSTITUTE, INC.

By:    _____

Juan Rangel

Its:    President & CEO_____

Date    3/14/14

FCE BENEFITS ADMINISTRATORS, INC.

By:   _____

Gary Beckman

Its    PRESIDENT, CEO

Date·   3-14-2014

⬚ ORIGINAL

2014 0028

# Exhibit 5

RODEY, DICKASON, SLOAN, AKIN & ROBB, P A
ATTORNEYS AT LAW
201 THIRD STREET NW  SUITE 2200
ALBUQUERQUE, NEW MEXICO 87102

P O BOX 1888
ALBUQUERQUE, NEW MEXICO 87103
WWW RODEY COM

TELEPHONE (505) 765-5900
FACSIMILE (505) 768-7395

MARK K ADAMS
BRUCE HALL
JOHN P SALAZAR
JOHN P BURTON
CATHERINE T GOLDBERG
EDWARD RICCO
W MARK MOWERY
PATRICK M SHAY
ELLEN T SKRAK
HENRY M BOHNHOFF
CHARLES K PURCELL
ANDREW G SCHULTZ
SCOTT D GORDON
NELSON FRANSE
THERESA W PARRISH
PAUL R KOLLER
CHARLES J VIGIL
THOMAS L STAHL
DAVID W BUNTING
LESLIE McCARTHY APODACA
JEFFREY M CROASDELL
SUNNY J NIXON
JEFFREY L LOWRY
R TRACY SPROULS
DONALD B MONNHEIMER
ALAN HALL
JULIE P NEERKEN
THOMAS A OUTLER
SETH L SPARKS
LISA CHAVEZ ORTEGA
JOCELYN C DRENNAN

MICHAEL J BRESCIA
AARON C VIETS
KURT B GILBERT
RICK BEITLER
JUSTIN A HORWITZ
SANDRA L BEERLE
VALERIE REGNARD DENTON
BRENDA M SAIZ
BRIAN P BRACK
TODD E RINNER
CHARLES R HUGHSON
JOSE R BLANTON
CRISTINA A ADAMS
MICHAEL E KAEMPER
MARGOT A HEFLICK
KRYSTA A THOMAS
GLENN A BEARD
GINA T CONSTANT
ROBERT L LUCERO
TYLER M CUFF
KEVIN J BANVILLE
DENISE M CHANEZ
ROBERT J SANCHEZ
JENNIFER L HOLLANDER
STEPHEN R MARSHALL
SHANNON M SHERRELL
RICHARD B HATCH
JESSICA R TERRAZAS
TARA L EDGMON
ELYSE A ECKART
MATTHEW M BECK

OF COUNSEL
JOHN D ROBB
ROBERT M ST JOHN
RICHARD C MINZNER
JO SAXTON BRAYER
DEWITT M MORGAN
CHARLES A SEIBERT III
CYNTHIA A LOEHR
PERRY E BENDICKSEN III
JOHN N PATTERSON

BERNARD S RODEY (1856-1927)
PEARCE C RODEY (1889 1958)
DON L DICKASON (1906 1999)
WILLIAM A SLOAN (1910-1993)
JACKSON G AKIN (1919 2010)

SANTA FE OFFICE
119 EAST MARCY STREET  SUITE 200
SANTA FE NEW MEXICO 87501 2046
P O  BOX 1357
SANTA FE NEW MEXICO 87504 1357
TELEPHONE (505) 954 3500
FACSIMILE (505) 954 3942

WRITER S DIRECT NUMBER
(505) 766 7557

JNEERKEN@RODEY COM

March 24, 2014

**VIA EMAIL: gbeckman@fce.com and sporter@fce.com**

Gary Beckman
Steve Porter
FCE Benefit Administrators, Inc
887 Mitten Road
Burlingame, CA  94010

RE     TRDI Health & Welfare Plan

Dear Messrs  Beckman and Porter

This firm represents Training, Rehabilitation & Development Institute, Inc  ("TRDI")  As you know, TRDI signed the Training, Rehabilitation & Development Institute, Inc  Health & Welfare Plan (the "Plan")  It is my understanding that effective December 1, 2013, the major medical benefits under the Plan became fully insured under two insurance policies  Prior to that date, benefits were provided on a self-insured basis  Section 1 12 of the Plan provides that TRDI is the ERISA plan administrator  Section 4 3 of the Plan provides that, except to the extent delegated to the TPA, TRDI is responsible for keeping a record of all action, and maintaining books of accounts, records, and other data necessary to administer the Plan and to meet the disclosure and reporting requirements of ERISA   Under the Third Party Administrator Agreement, TRDI has the obligation to dispose of unallocated assets  Also under that document, TRDI has the sole and absolute discretion to make final decisions on entitlement to Plan benefits

Section 107 of ERISA requires that all records pertaining to filings or disclosures be maintained and kept available for examination for at least six years after the filing date  Section 209 of ERISA requires that an employer maintain benefit records with respect to each employee sufficient to determine the benefits due or which may become due to such employees  The Department of Labor requires that fiduciaries monitor the performance of plan vendors

1672037 1

RODEY, DICKASON, SLOAN, AKIN & ROBB, P A

Gary Beckman
Steve Porter
March 24, 2014
Page 2

Olga Guzman at TRDI has indicated to us that TRDI does not have many of the documents TRDI requires to discharge its duties under the Plan and ERISA   This letter constitutes a demand that FCE provide to Olga Guzman at TRDI within two weeks

1.   A check register for the Plan showing check numbers, dates, payees, and amounts for the three year period ending on November 30, 2013,

2   A check register for the Plan showing check numbers, dates, payees, and amounts from December 1, 2013 to date,

3   A list of all pending claims under the Health & Welfare Plan,

4   Quarterly trust statements for the trust associated with the Health & Welfare Plan, listing all trust assets, the recipients, dates and amounts of all payments, other than those in Item 1 above;

5   A log or comparable document showing the date of receipt of each claim under the Health & Welfare Plan, the date of disposition and all correspondence with any Health & Welfare Plan participants or their representatives relating to claim denials and appeals, and

6   All plan and trust documents, certificates of insurance, third party administrator agreement and other documents relating to the Health & Welfare Plan and 401(k) Plan as of December 1, 2013 and to date

Please simultaneously forward copies of Items 1 through 3 above to.

Kirk Mask, CPA
Williams, Crow, Mask, LLP
1100 NE Loop 410, Suite 350
San Antonio, TX 78209

Please also confirm that the foregoing information exists for the entire time FCE has administered the Plan, and will be maintained indefinitely by FCE unless forwarded to TRDI

Further, effective as of the time of receipt of this letter, no disbursements should be made from or on behalf of the Health & Welfare and/or 401(k) Plan without the prior written approval of Olga Guzman

On March 22, 2014, you forwarded a number of draft documents to Ms Guzman   Because of FCE's greatly reduced duties and the Health & Welfare Plan when the benefits became fully

RODEY, DICKASON, SLOAN, AKIN & ROBB, P A

Gary Beckman
Steve Porter
March 24, 2014
Page 3

insured, the fee schedules need to be reduced as of December 1, 2013.  The proposed 25% is not acceptable, as FCE's duties have been reduced to very minimal duties   Further, please explain why the Trust referenced in the Health & Welfare Plan Adoption Agreement is needed after the resolution of claims incurred before December 1, 2013

Please contact me if you desire any additional clarification

Very truly yours,

Julie P  Neerken

JPN sm

cc      Juan Rangel
        Olga Guzman

2014 0031

Exhibit 6

MARK K. ADAMS
BRUCE HALL
JOHN P. SALAZAR
JOHN P. BURTON
CATHERINE T. GOLDBERG
EDWARD RICCO
W. MARK MOWERY
PATRICK M. SHAY
ELLEN T. SKRAK
HENRY M. BOHNHOFF
CHARLES K. PURCELL
ANDREW G. SCHULTZ
SCOTT D. GORDON
NELSON FRANSE
THERESA W. PARRISH
PAUL R. KOLLER
CHARLES J. VIGIL
THOMAS L. STAHL
DAVID W. BUNTING
LESLIE McCARTHY APODACA
JEFFREY M. CROSWELL
SUNNY J. NIXON
JEFFREY L. LOWRY
R. TRACY SPROULS
DONALD B. MONNHEIMER
ALAN HALL
JULIE P. NEERKEN
THOMAS A. CUTLER
SETH L. SPARKS
LISA CHAVEZ ORTEGA
JOCELYN C. DRENNAN

MICHAEL J. BRESCIA
AARON C. VIELD
KURT R. GILBERT
RICK BEITLER
JUSTIN A. HORWITZ
SANDRA L. BEERLE
JENNIFER L. STONE
VALERIE REIGHARD DENTON
BRENDA M. SAIZ
BRIAN P. BRACK
TODD E. RINNER
CHARLES R. HUGHSON
JOSE R. BLANTON
CRISTINA A. ADAMS
MICHAEL E. KAEMPER
MARGOT A. HEFLICK
KRYSTLE A. THOMAS
GLENN A. BEARD
ROBERT L. LUCERO
TYLER M. CUFF
KEVIN J. DANVILLE
DENISE M. CHANEZ
ROBERT J. SANCHEZ
JENNIFER L. HOLLANDER
STEPHEN R. MARSHALL
SHANNON M. SHERRELL
RICHARD B. HATCH
JESSICA R. TERRAZAS
TARA L. EDGMON
ELYSE A. ECKART
MATTHEW M. BECK

RODEY, DICKASON, SLOAN, AKIN & ROBB, P A
ATTORNEYS AT LAW
201 THIRD STREET NW, SUITE 2200
ALBUQUERQUE, NEW MEXICO 87102

P O BOX 1888
ALBUQUERQUE, NEW MEXICO 87103
WWW RODEY COM

TELEPHONE (505) 765-5900
FACSIMILE (505) 768-7395

OF COUNSEL
JOHN D ROBB
ROBERT M ST JOHN
RICHARD D MINZNER
JO SAXTON BRAYER
DEWITT M MORGAN
CHARLES A SCRIBBT III
CYNTHIA A LOEHR
PERRY E BENDICKSEN III
JOHN M PATTERSON
DAVID P BUCHHOLTZ

BERNARD S RODEY (1856 1927)
PEARCE C RODEY (1888 1953)
DON L DICKASON (1906-1999)
WILLIAM A SLOAN (1910-1993)
JACKSON G AKIN (1919 2010)

SANTA FE OFFICE
119 EAST MARCY STREET SUITE 200
SANTA FE NEW MEXICO 87501 2046
P O BOX 1357
SANTA FE NEW MEXICO 87504-1357
TELEPHONE (505) 954-3500
FACSIMILE (505) 954-3942

WRITER'S DIRECT NUMBER
(505) 768 7221

EECKART@RODEY COM

June 10, 2014

**VIA EMAIL – gbeckman@fcebenefit com and sporter@fcebenefit.com**

Gary Beckman
Steve Porter
FCE Benefit Administrators Inc
887 Mitten Road
Burlingame, CA 94010

RE:    FCE administrative fees and termination of relationship

Dear Mr. Beckman and Mr Porter

This letter is intended to serve as your written notice that Training, Rehabilitation and Development Institute, Inc ("TRDI") is terminating the Third Party Administrator Agreement between TRDI and FCE Benefit Administrators, Inc. ("FCE"), dated September 15, 2008 and amended effective January 1, 2014 ("TPA Agreement")   This termination will be effective August 31, 2014

As Ms Neerken communicated to you in her letter dated April 17, 2014, it is TRDI's position that TRDI and FCE do not have a current fee agreement due to the massive diminution in services being provided to TRDI by FCE as a result of TRDI's change from a self-insured to a fully insured plan on December 1, 2013   Furthermore, FCE's duties were further reduced when TRDI's vision, dental and short term disability benefits became fully insured on June 1, 2014   Because you have not responded to that letter, we assume that you are in agreement that FCE's fees should be reduced to $10 per month per employee.

Additionally, within 3 days of receipt of this letter, we request that FCE provide all copies of agreements with insurance companies associated with the TRDI plan pursuant to which FCE is receiving commissions or administrative fees as required by Article III(g) of the TPA Agreement

1724612 1

RODEY, DICKASON, SLOAN, AKIN & ROBB, P A

Gary Beckman
Steve Porter
June 10, 2014
Page 2

The TPA Agreement requires that FCE maintain professional errors and omissions insurance in an amount not less than one million dollars ($1,000,000) per occurrence and three million dollars ($3,000,000) aggregate   Please provide us with a copy of this insurance policy within 3 days of receipt of this letter   We also respectfully request that you notify your errors and omissions insurance carrier of a potential claim

Please direct the responses requested in this letter and all future correspondence with TRDI to my attention at the Rodey Law Firm at the email or mailing address above

Sincerely,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P A

By _____
Elyse Eckart

cc   Juan Rangel
Olga Guzman