UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FCE BENEFITS ADMINISTRATORS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRAINING, REHABILITATION & DEVELOPMENT INSTITUTE, INC., <br><br> Defendant. | Case No. 15-cv-01160-JST <br><br> **ORDER GRANTING MOTION TO REALIGN** <br><br> Re: ECF No. 51 |

Before the Court is Defendant Training, Rehabilitation & Development Institute, Inc.'s ("TRDI") Motion to Realign, in which TRDI requests that it be realigned as plaintiff and that current Plaintiff, FCE Benefits Administrators, Inc. ("FCE") be realigned as defendant. The Court will grant the motion.

**I.   BACKGROUND**

FCE is a third party administrator that provides services including hour tracking, fringe compliance, consolidated premium billing, and web enrollment and cloud solutions for fringe benefit health plans. Declaration of Gary Beckman ("Beckman Decl."), ECF No. 18 ¶ 2. TRDI is a former FCE client. Id. ¶ 3. In September 2008, the parties entered into an Adoption Agreement for TRDI's Health and Welfare Plan and a Third Party Administrator Agreement ("TPA Agreement"). Id. On June 10, 2014, TRDI notified FCE that it was terminating the TPA Agreement. Id. ¶ 7. FCE alleges, however, that it continued to provide services through mid-October of 2014, with TRDI's approval, and that it was not compensated for those services. Id.; see also Compl., ECF No. 2.

On January 30, 2015, FCE filed a complaint against TRDI in San Mateo County Superior Court for (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3)

unjust enrichment; and (4) quantum meruit. Compl. at 1. On March 11, 2015, TRDI filed a cross-complaint in San Mateo County Superior Court, stating claims for (1) breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"); (2) prohibited transactions under ERISA; (3) equitable relief pursuant to ERISA; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; (6) unjust enrichment; and (7) accounting. Cross-compl., ECF No. 1-2 at 3. On the same day, TRDI removed the action to this Court based on diversity of citizenship, pursuant to 28 U.S.C. sections 1332 and 1441(a) and (b). ECF No. 1. FCE does not dispute that the case meets the requirements for diversity jurisdiction. ECF No. 22 at 2.

FCE filed its motion to remand on April 1, 2015. ECF No. 16. On May 7, 2015, the Court granted the motion in part. ECF No. 24. It retained jurisdiction over TRDI's ERISA counterclaims, but concluded that both FCE's and TRDI's state law claims should be remanded to the state court, as they were sufficiently distinct from the federal claims under ERISA that parallel litigation would not be duplicative or waste judicial resources. ECF No. 24 at 8.

The parties have participated in mediation and settlement talks. See, e.g., ECF No. 42. On June 15, 2016, TRDI filed this Motion to Realign. ECF No. 51. The motion is opposed by FCE. ECF No. 55.

## II.   LEGAL STANDARD

A complaint's alignment of the parties "is not binding on the courts." Scotts Co. LLC v. Seeds, Inc., 688 F.3d 1154, 1157 (9th Cir. 2012) (quoting Dolch v. United Cal. Bank, 702 F.2d 178, 181 (9th Cir. 1983)). "Instead, '[w]e must align for jurisdictional purposes those parties whose interests coincide respecting the 'primary matter in dispute.'" Id. (quoting Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 873 (9th Cir. 2000)).

There is some variation in the legal analysis that courts generally conduct in regards to motions to realign. In Scotts Co., the Ninth Circuit applied the "primary matter in dispute" test to determine proper alignment of the parties, id., and at least one case cited extensively by the parties, Plumtree Software, Inc. v. Datamize, LLC, No. C 02-5693 VRW, 2003 WL 25841157, at *1 (N.D. Cal. Oct. 6, 2003), follows the same test. As FCE notes, however, the Ninth Circuit has generally applied that test in cases where realignment could potentially destroy diversity

jurisdiction. See Scotts Co., 688 F.3d at 1157; Prudential, 204 F.3d at 87. At least one district court has declined to use that test when, as in this case, federal jurisdiction is not at issue. Kerr Corp. v. N. Am. Dental Wholesalers, Inc., No. SACV 11-0313 DOC CWX, 2011 WL 4965111, at *3 (C.D. Cal. Oct. 18, 2011) ("[T]he 'primary purpose' test that Kerr urges is traditionally applied in a different context, namely to determine whether a party is improperly designated as a defendant or plaintiff as part of an effort to establish sham diversity jurisdiction.").

FCE contends that the legal standards from cases such as Scotts Co. and Prudential should be disregarded based on this distinction. ECF No. 55 at 6. At the same time, however, FCE also relies heavily on Plumtree Software, in which the district court used the "primary purpose" test despite not being confronted with diversity jurisdiction issues, and indeed, explicitly rejected the suggestion that the "primary purpose" test should be limited to cases involving diversity jurisdiction concerns. 2003 WL 25841157 at *2-3.

Plumtree Software considered several factors to determine the "primary purpose" of the litigation. These factors included (1) "the first party to sue on the issue"; (2) the "natural plaintiff" in the case, as defined by who raises "the affirmative claim" and who bears "the burden of proof"; (3) whether realignment "may aid in the logical presentation of the evidence at trial"; and (4) whether realignment "mitigates the effects of . . . evident forum-shopping."[1] Id. at *2-5. Other district courts have considered some of these same factors. See Allegro Ventures, Inc. v. Almquist, No. 11-CV-2009-L WVG, 2013 WL 3864329, at *1 (S.D. Cal. July 24, 2013) ("The burdens of proof also support realignment."); Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc., No. C 03-01431 SBA(EDL), 2006 WL 1646110, at *2 (N.D. Cal. June 12, 2006) (considering both burdens of proof and "efficiency factors and clear presentation of the evidence").

Using this case law as guidance, the Court turns to the merits of the motion.

**III.   DISCUSSION**

---

[1] Plumtree Software, which involved a claim for declaratory judgment of patent noninfringement and a cross-claim of infringement, also considered two factors that are less relevant here: the "rationale for bringing a declaratory judgment action" and consistency with "the Patent Local Rules and the parties' joint case management statement." 2003 WL 25841157 at *4-5.

TRDI argues that because its ERISA claim is the only one remaining before this Court, it is the natural plaintiff in the case. ECF No. 51 at 4. It contends that "TRDI's ERISA claims form the primary matter in dispute," and that "FCE retains no affirmative claims and, as a result, retains no burden to prove any claims." Id.

TRDI's position is persuasive. Indeed, it is difficult to see how FCE could remain the plaintiff in this case when it is presenting no affirmative claims to the Court. By contrast, all of the cases cited by Defendant involve at least a dispute regarding which parties' claims should be considered the primary matter in the litigation. See Plumtree Software, 2003 WL 25841157, at *1 (comparing claim for declaratory judgment of non-infringement with counterclaim of infringement); Allegro Ventures, 2013 WL 3864329, at *2 (comparing claim for declaratory relief that a party is not liable for maintenance and cure with counterclaims that the party is liable); Fresenius Med. Care, 2006 WL 1646110, at *2 (comparing claim for declaratory judgment of non-infringement with counterclaim of infringement); Kerr Corp., WL 4965111, at *2 (comparing commercial defamation and similar claims with trademark infringement and similar claims); Animal Care Sys., Inc. v. Hydropac/Lab Products, Inc., No. 13-CV-00143-MSK-BNB, 2014 WL 103812, at *2 (D. Colo. Jan. 10, 2014) (comparing claims of infringement with claims of invalidity). Here, it is quite obvious that TRDI bears the burden of proof and that its claims are the primary matter in dispute, because its claims are the only ones before the Court. Because of this, TRDI further argues that realignment will "aid in the logical presentation of the evidence at trial." ECF No. 51 at 4.

FCE offers a number of responses to TRDI's contentions, none of which are persuasive. First, it argues that because the parties are sharing discovery between both the federal ERISA action and the parallel state action, granting the request will result in discovery documents with different parties identified as plaintiff and defendant, which "is virtually guaranteed to confuse the jury." ECF No. 55 at 2. However, FCE identifies no law suggesting that the Court should base its alignment of the parties in this case based on the status of a different case; indeed, TRDI points to Ninth Circuit law indicating that this would be improper. See ECF No. 51 at 6 (citing Scotts Co., 688 F.3d at 1156 ("[W]hen a federal court evaluates realigning the parties in a case, it may not

1  consider claims made in a different case.")).  In any event, even if realignment could potentially
2  result in some confusion, it would be easy to avoid or remedy this confusion in the state court
3  action through the myriad of procedural options available to both the court and the parties.

4        Second, FCE argues that some of the considerations used in the Plumtree Software
5  decision, including which party first brought suit and the danger of juror confusion, support
6  denying TRDI's motion.  ECF No. 55 at 6.  This may be true, but those considerations are
7  outweighed by other factors also discussed in the Plumtree Software case, such as that TRDI is the
8  only party bringing affirmative claims and with a burden of proof.  Moreover, as TRDI points out,
9  Plumtree Software offered these various factors as support for why it concluded that one party's
10 claims were the primary purpose of the litigation.  See Plumtree Software, 2003 WL 25841157, at
11 *6.  Here, there is no dispute that TRDI's ERISA claims, as the only federal claims left, are the
12 primary purpose of this case.

13       Third, FCE contends that the motion is untimely.  It states that "[w]hile, theoretically, a
14 motion for realignment can be submitted at any time, FCE submits such motions are generally
15 submitted early in the litigation."  ECF No. 55 at 7.  Missing from this point, however, is any
16 identified case law suggesting that the timing of the motion is relevant.  FCE adds that had it
17 known of TRDI's intent to seek realignment, it would have raised its concerns when stipulating to
18 the parties' global discovery plan, and repeatedly asserts that it "has received no explanation"
19 when asking TRDI for its rationale in requesting realignment.  ECF No. 55 at 7.  This Court has
20 already addressed FCE's argument about potential jury confusion, and concluded it is not
21 dispositive.  As for TRDI's explanation, it has already been stated quite clearly: TRDI is the only
22 party bringing claims before this Court and bearing a burden of proof, and therefore is the natural
23 plaintiff.

24       Finally, FCE asserts that realignment is unnecessary, because the Court still retains "its
25 inherent authority to direct the order of evidence in the Federal Action or tak[e] any other similar
26 steps it may deem appropriate to facilitate an orderly trial."  ECF No. 55 at 3.  It is true that
27 "district courts have inherent power to control their dockets," and that "all federal courts are
28 vested with inherent powers enabling them to manage their cases and courtrooms effectively and

5

1  to ensure obedience to their orders." <u>Allegro Ventures</u>, 2013 WL 3864329, at *1 (quotation marks
2  and citations omitted).  One of the tools within the Court's inherent power is to realign the parties
3  when it properly reflects the dispute before it.  Here, TRDI is the natural plaintiff in the case.
4  Accordingly, realignment is appropriate.

## CONCLUSION

For the reasons stated above, TRDI's Motion for Realignment is granted.  From this point onward, TRDI shall be designated as Plaintiff, and FCE shall be designated as Defendant.

IT IS SO ORDERED.

Dated:  August 22, 2016



JON S. TIGAR
United States District Judge